

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL A. SHAFFER,                     :
                                        :
                Plaintiff               :
                                        :
        v.                              :        CIVIL ACTION NO. 01-CV-1065
                                        :        JUDGE SYLVIA H. RAMBO
SUSAN GRAYBILL AS AN                    :
INDIVIDUAL AND AS                       :
ADMINISTRATRIX OF THE                   :        FILED
ESTATE OF DENNIS M.                     :        HARRISBURG, PA
GRAYBILL,                               :
MINUTEMAN PRESS                         :        JUL 1 6 2001
INTERNATIONAL, INC.,                    :        MARY E. D'ANDREA, CLERK
and ROBERT EMMETT,                      :        Per _____
                                        :                Deputy Clerk
                Defendants              :

MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS
OF DEFENDANTS SUSAN GRAYBILL, INDIVIDUAL AND SUSAN
GRAYBILL, EXECUTRIX OF THE ESTATE OF DENNIS M. GRAYBILL

1

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants Susan Graybill, individual and Susan Graybill, Executrix of the Estate of Dennis M. Graybill[1] (collectively the "Moving Defendants"), move the Court to dismiss the above-captioned civil action filed by Michael A. Shaffer (the "Plaintiff") for Plaintiff's violation of an indemnity and hold harmless agreement between the parties. In the alternative, Moving Defendants also move the Court to dismiss Plaintiff's Complaint and First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6), and for an award of attorney's fees and costs associated with filing this Motion.

## I.    PROCEDURAL HISTORY

Moving Defendants are defendants in a civil action that was originally filed in the Court of Common Pleas of Cumberland County, Pennsylvania captioned *Michael A. Shaffer v. Susan Graybill, as an individual and as Administratrix of the Estate of Dennis M. Graybill; Minuteman Press International, a New York Corporation; and Robert Emmett*, Docket No. 2001-2664. Moving Defendants received a copy of the Complaint in Law with Action for Declaratory Judgment (the "Complaint") and the First Amended Complaint with Action for Declaratory Judgment (the "First Amended Complaint") via personal service on or about June 25, 2001. A copy of the Complaint is attached hereto as Exhibit A. A copy of the First Amended Complaint is attached hereto as Exhibit B. On June 15, 2001,

---

[1] Plaintiff's Complaint and First Amended Complaint erroneously identify Susan Graybill as Administratrix of the Estate of Dennis M. Graybill. Susan Graybill is the Executrix of the Estate of Dennis M. Graybill.

Defendants Minuteman Press International and Robert Emmett (collectively, the "Minuteman Defendants") filed a Notice of Removal of the case to this Court; the Moving Defendants joined in the removal of this case to this Court.

In the Complaint, the Plaintiff asserts the following claims:

  a.  Count I- fraud in the inducement, fraudulent misrepresentation;
  b.  Count II- breach of contract;
  c.  Count III- negligence and infliction of emotional distress; and
  d.  Count IV- punitive damages.

In the First Amended Complaint, Plaintiff incorporates by reference and adds Count VI[sic][2] attempting to allege misrepresentation, omissions, false statements and conspiracy in violation of various unspecified "blue sky laws, federal FTC rules, federal securities laws, the criminal law of the Commonwealth of Pennsylvania, and federal criminal law," and Count VII[sic] alleges claims only against the Minuteman Defendants.

## II.    STATEMENT OF FACTS

Plaintiff and Susan Graybill and Dennis M. Graybill, now deceased, entered into a Sale of Assets Agreement on or about September 1, 2000 (the "Sales Agreement"). A copy of the Sales Agreement is attached as Exhibit C. Subject to the terms and conditions contained therein, the Sales Agreement obligated Susan Graybill and Dennis M. Graybill, now deceased, to sell to Plaintiff the assets, good

---

[2] Plaintiff's Complaint contains no Count V. Therefore, Counts VI and VII of the First Amended Complaint should be labeled as Counts V and VI.

will, trade name and franchise rights of a Minuteman Press printing business located 855 Market Street, Lemoyne, Pennsylvania. See, Exhibit C.

The Sales Agreement contains express provisions concerning representations of the Graybills, as well as a provision whereby the Plaintiff would hold the Graybills harmless from damages. Specifically, the Sales Agreement provides, in pertinent part that:

Section 9. <u>Purchaser's Acceptance</u>. Purchaser represents and acknowledges that it has entered into this Agreement on the basis of its own examination, personal knowledge, and opinion of the value of the assets. Purchaser has not relied on any representations made by Seller other than those specified in this Agreement.

*    *    *

[Section] 11.2. <u>Purchaser's Indemnification</u>. Purchaser agrees to defend, indemnify, and hold harmless Seller from and against:

11.2.1. Any and al claims, liabilities, and obligations of every kind and description arising out of or related to the operation of the business following Closing[.]

Exhibit C §§ 9, 11.2.

## III.    STATEMENT OF QUESTIONS PRESENTED

1. Should Plaintiff's Complaint and First Amended Complaint be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), because of the failure of the Plaintiff to rely on any representations of the Defendant Graybills under the terms of the Sales Agreement?

2. Should Plaintiff's Complaint and First Amended Complaint be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), because of the hold harmless clause contained in the Sales Agreement?

3.    Should Plaintiff's Complaint and First Amended Complaint be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), because of Plaintiff's inability to present evidence under the Dead Man's Act, 42 Pa.C.S. § 5930?

4.    Should Counts I, III and IV of the Complaint and Counts VI and VII of the First Amended Complaint be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted?

## IV.    STANDARDS OF REVIEW UNDER FED.R.CIV.P. 12(b)(6).

Under Fed.R.Civ.P. 12(b)(6), a district court is permitted to dismiss claims that fail to state a legal basis upon which relief can be granted. *See, Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3rd Cir. 1993). Where a court concludes that the factual allegations in a plaintiff's complaint, even if true, do not state a grounds for relief, then dismissal is warranted. *See, Bell v. Hood*, 327 U.S. 678 (1946); *Kronmuller v. West End Fire Co. No. 3*, 123 F.R.D. 170 (E.D. Pa. 1988).

On a Rule 12(b)(6) motion, a court is required to accept only well-pleaded facts as true; however, it is not required to accept as true any legal conclusions, deductions or opinions alleged in or inferred from the allegations contained in the complaint. *See, Interfaith Community Organization v. Allied-Signal, Inc.*, 928 F.Supp. 1339, 1346 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) and *Briscoe v. LaHue*, 663 F.2d 713 (7th Cir. 1981), *aff'd.* 460 U.S. 325 (1983)). Moreover, where the allegations of a complaint are contradicted by documents made a part thereof, the court may consider the documents and the court need not accept as true the allegations of the complaint. *Chester County Intermediate Unit v.*

5

*Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir. 1990). If the acceptable facts pleaded in the complaint, and reasonable inferences drawn from such allegations, are legally deficient to state a claim, a motion to dismiss should be granted. *McCoy v. United States*, 758 F.Supp. 299 (E.D. Pa. 1991). Dismissal is also appropriate where facts sufficient to support an affirmative defense, such as futility appear on the face of the complaint. *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1042 (2nd Cir. 1992); *La Porte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1255 (5th Cir. 1986)(citations omitted).

## V.    ARGUMENT

### A.    Plaintiff Cannot Establish Reliance on any Representations of the Moving Defendants.

Plaintiff's claims for fraud and fraudulent misrepresentation must be dismissed because Plaintiff cannot establish reliance on any representations of the Moving Defendants. To assert a claim for fraud, a plaintiff must prove, *inter alia*, that he justifiably relied on the misrepresentations of the defendant. *See, Huddleston v. Infertility Center of America*, 700 A.2d 453 (Pa.Super.Ct. 1997); *see also, Tyler v. O'Neill*, 994 F.Supp. 603 (E.D. Pa. 1998) (citing *Michael v. Shiley, Inc.*, 46 F.3d 1316, 1333 (3rd Cir. 1995) and *Sowell v. Butcher & Singer, Inc.* 926 F.2d 289 (3rd Cir. 1991).

Here, the Plaintiff has expressly stated, in Section 9 of the Sales Agreement between Plaintiff and the Moving Defendants, that he has not relied on any representations of the Moving Defendants other than those specified in the Sales Agreement. Exhibit C § 9. The Sales Agreement itself makes no representations whatsoever regarding the income and expenses of the business sold to the Plaintiff. Plaintiff's contention that the Moving Defendants misrepresented the operating expenses of the business, Exhibit A ¶ 13, ignores the plain language of the Sales Agreement signed by the Plaintiff indicating that the Plaintiff purchased the business from the Moving Defendants on the basis of Plaintiff's independent evaluation of the business and not on the basis of any representations of the Moving Defendants. Accordingly, Plaintiff's claim must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

**B.      Plaintiff Has Agreed to Hold the Moving Defendants Harmless.**

Plaintiff's claims against the Moving Defendants must be dismissed because the Plaintiff has contractually agreed to hold the Moving Defendants harmless from any and all damages arising from or related to the operation of the business. Exhibit C § 11.2.1. Where the language of a contract between the parties precludes suit, a motion to dismiss is proper. *See, Operating Bricklayers Union No. 62 of the Pennsylvania Welfare Fund v. Bricklayers Union No. 1 of the Pennsylvania Welfare Fund*, 45 F.R.D. 429 (E.D. Pa. 1968). Here, the Plaintiff claims economic

loss resulting from higher than anticipated expenses relating to the operation of the business. Specifically, Plaintiff claims that the businesses operating expenses are $5,000 per month higher that what he expected them to be. Exhibit A ¶ 13. As a result, Plaintiff claims damages arising from these increased operating expenses, and the attendant inability to generate a profit from the business. Exhibit A ¶ 14. All of Plaintiff's damage arise from or are related to the operation of the business, and are, therefore, subject to the hold harmless clause of the Sales Agreement. Accordingly, Plaintiff's claims against the Moving Defendants must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

**C.    Plaintiff is Prevented Under the Dead Man's Act, 42 Pa.C.S. § 5930, From Presenting Evidence to Support His Claims.**

Plaintiff cannot present evidence in support of his claims of fraud and fraudulent misrepresentation against the Moving Defendants by virtue of the Dead Man's Act, 42 Pa.C.S. § 5930.  The Dead Man's Act prevents the testimony of a witness to a transaction or contract where a decedent had an interest in the transaction or contract, the interest of the witness is adverse to that of the decedent, and the right of the decedent has passed to a party to the litigation. *Pagnotti v. Old Forge Bank*, 429 Pa.Super. 39, 631 A.2d 1045 (1993), appeal denied, 537 Pa. 623, 641 A.2d 588 (1993).

Here, the Plaintiff alleges misrepresentations on the part of Dennis M. Graybill, now deceased. Exhibit A, ¶ 13. The interest of the Plaintiff is adverse to that of the deceased Dennis M. Graybill, in that the Plaintiff seeks monetary damages from the estate of the decedent for the actions of the decedent. Exhibit A, ¶ 14. The rights of the decedent have passed to the Executrix of the estate, Susan Graybill. The Dead Man's Act prevents the Plaintiff from testifying as to what Dennis M. Graybill represented to the Plaintiff because Dennis M. Graybill is unable to counter any assertions made by the Plaintiff. Where a plaintiff cannot produce evidence to prove his claims, a motion to dismiss is proper. *Scholl v. QualMed, Inc.*, 103 F.Supp.2d 850 (E.D. Pa 2000). Accordingly, because the Plaintiff cannot produce evidence of any misrepresentations of Dennis M. Graybill, Plaintiff's claims must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

**D.    Counts I and VI [sic] For Fraud and Fraudulent Misrepresentation Must Be Dismissed Because They Lack Specificity.**

Counts I and VI[sic] for fraud and fraudulent misrepresentation must be dismissed for failure to assert with particularity the necessary elements of fraud required by Fed.R.Civ.P. 9(c). To assert a claim for fraud, a plaintiff must plead facts demonstrating that there was: 1) a representation; 2) which is material to the transaction at hand; 3) made falsely, with knowledge of its falsity or recklessness

as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5) justifiable reliance on the misrepresentation; and 6) the resulting injury proximately caused by such reliance. *See, Huddleston v. Infertility Center of America*, 700 A.2d 453 (Pa.Super.Ct. 1997); *see also, Tyler v. O'Neill*, 994 F.Supp. 603 (E.D. Pa. 1998) (citing *Michael v. Shiley, Inc.*, 46 F.3d 1316, 1333 (3rd Cir. 1995) and *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289 (3rd Cir. 1991)). The who, what, where and when of each incident of fraud must be stated. *See, Rosen v. Communication Services Group, Inc.*, 2001 WL 474421 *2 (E.D. Pa. 2001). Thus, the plaintiff must identify "(1) precisely what statements were made in what documents or oral representations…, and (2) the time and place of each statement and the person responsible for making…, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what defendants 'obtained as a consequence of the fraud'." *See, Fitch v. Radnor Industries, Ltd.*, 1990 WL 150110, *2 (E.D. Pa. 1990).

The Complaint and the First Amended Complaint fail to state the "who, what, where and when" of any alleged fraud with particularity. Nowhere in the Complaint or the First Amended Complaint does the Plaintiff state when or where the alleged fraudulent representations occurred. The Complaint and the First Amended Complaint are also devoid of any precise statements which allegedly constitute misrepresentations, the manner in which any statement purportedly

misled Plaintiff, or what any defendants gained or obtained as a result of the alleged fraudulent statements. Thus, Counts I and VI[sic] must be dismissed as to fraud and fraudulent misrepresentation for failure to meet the particularity requirement of Fed.R.Civ.P. 9(c) and Fed.R.Civ.P. 12 (b)(6)

**E.    Counts I and VI [sic] For Civil Conspiracy Must Be Dismissed.**

The tort of conspiracy requires a plaintiff to plead facts showing: 1) a combination of two or more persons acting with a common purposes to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done in pursuance of the common purposes; and 3) actual legal damage. *Landau v. Western Pennsylvania Nat'l. Bank*, 445 Pa. 217, 282 A.2d 335 (1971); *Fife v. Great Atlantic & Pacific Tea Co.*, 356 Pa. 265, 52 A.2d 24 (1947), *cert. denied*, 332 U.S. 778 (1947). Malice, i.e., intent to injure and a lack of justification, are essential parts of a civil conspiracy cause of action. *Barmasters Bartending School v. Authentic Bartending School*, 931 F.Supp. 377, 386 (E.D. Pa. 1996)(*citing Rutherfoord v. Presbyterian-University Hospital*, 417 Pa.Super. 316, 333, 612 A.2d 500, 508-509 (1992)). Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act. *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa.Super.Ct. 2000)(citing *Pelagatti v. Cohen*, 703 Pa.Super. 422, 536 A.2d 1337, 1342 (1987)).

Because the Complaint and the First Amended Complaint fail to state claims for fraud in the inducement, fraudulent misrepresentation, and infliction of emotional distress for the reasons stated herein, there can be no cause of action for conspiring to commit such acts. Moreover, the Complaint and First Amended Complaint are devoid of any allegation of malice on behalf of any Moving Defendant. Accordingly, Counts I and VI[sic] of the Complaint fail to state the essential elements of civil conspiracy and, therefore, must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

**F.    Count III's Claim for Negligence Must Be Dismissed.**

Count III's claim for negligence must be dismissed. While Plaintiff does not specifically refer to the Moving Defendants in Count III, Plaintiff's incorporation of each Count into all Counts and each paragraph into all paragraphs, Exhibit A ¶ 23, obligate the Moving Defendants to respond the Count III in their Motion to Dismiss.

To adequately state a claim for negligence, the plaintiff must show 1) a duty or obligation requiring the actor to conform to a standard of conduct for the protection of others against unreasonable risks; 2) a failure on the actor's part to conform to the applicable standard; 3) a breach of the duty; 4) a reasonably close causal connection between the conduct and the resulting injury; and, 5) actual loss

or damage. *See, Reformed Church of Ascension v. Theodore Hooven & Sons, Inc.*, 764 A.2d 1106, 1109, 1110 (Pa.Super.Ct. 2000).

Here, Plaintiff fails to allege any duty on the part of the Moving Defendants. Furthermore, Plaintiff fails to allege any breach of any duty on the part of the Moving Defendants. Accordingly, Count III must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### G.    Count III's Claim for Emotional Distress Must Be Dismissed.

The claim for infliction of emotional distress alleged in Count III of the Complaint must be dismissed because Plaintiff has failed to allege physical injury or acts of outrageous conduct committed by any Moving Defendant sufficient to support such claims.

Pennsylvania law establishes that, except is limited, compelling circumstances not applicable here, a claimant may not recover damages for negligent infliction of emotional distress in the absence of attendant physical injury or where the contract or its breach is of a kind such that serious emotional disturbance was a particularly likely result. *Houston v. Texaco, Inc.*, 371 Pa.Super. 399, 538 A.2d 502, *alloc. denied*, 520 Pa. 575, 549 A.2d 136 (1988*); Price v. Blyth Eastman Paine Webber, Inc.*, 576 F.Supp. 431, 435 (W.D. Pa. 1983) (citing Restatement of Contracts (Second) § 353 (1981)).

Plaintiff alleges that he was unable to profitably operate his franchises because the Moving Defendants did not inform him that the business had insufficient income to be profitable, and that as a result he suffered emotional distress. Plaintiff does not allege that he suffer any physical injury arising out of any alleged actions by any Moving Defendant. Further, Plaintiff does not describe any purported outrageous conduct or breach of contract of a kind particularly likely to cause serious emotional disturbance. Accordingly, Count III must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### H.    Count IV's Claim for Punitive Damages Must Be Dismissed.

Under Pennsylvania law, punitive damages are not an independent cause of action and are only awarded to deter outrageous and malicious conduct. *See, In re Benson*, 180 B.R. 796 (Bankr. W.D. Pa. 1995); *Garden State Tire Realty Corp. v. R.K.R. Hess Associates, Inc.*, 762 F.Supp. 776 (M.D. Pa. 1990). Where, as here, no outrageous or malicious conduct is alleged to have been committed by any defendant, Count IV of the Complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

## VI.    CONCLUSION

For the foregoing reasons, defendants Susan Graybill, as and individual and as Executrix of the Estate of Dennis M. Graybill, respectfully request that this Court grant their Motion to Dismiss in the form of order attached, dismissing

plaintiff's claims with prejudice and granting such other relief as the Court deems just and proper.

Respectfully submitted,

Charles Rees Brown
Pa. Id. No. 70612
Nicholas & Foreman, P.C.
4409 North Front Street
Harrisburg, PA 17110
(717) 236-9391

Attorney for Defendants,
Susan Graybill, individual and Susan Graybill, Executrix of the Estate of Dennis M. Graybill

Dated: July 16, 2001

# EXHIBIT A

### In the Court of Common Pleas of Cumberland County, Pennsylvania
### Civil Division

| | |
|---|---|
| Michael A. Shaffer,<br>          Plaintiff, | } No. 01- 2664 Civil Term<br>}<br>} |
|       v. | }<br>} Judge _____ |
| Susan Graybill as an individual<br>and as Administratrix of the<br>Estate of Dennis M. Graybill;<br>Minuteman Press<br>International, a New York corpor-<br>ation; and Robert Emmett<br>          Defendants. | }<br>}<br>,}<br>}<br>}<br>}<br>} Jury Trial Demanded |

### NOTICE TO DEFEND

### Notice

You have been sued in court. If you wish to defend against these claims, you must take action within twenty (20) days after this complaint and notice are served by entering an appearance personally or by an attorney and filing in writing with the Court your defenses or objections. **You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice. A judgment may also be entered against you for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.**
**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

**Cumberland County Lawyer Referral Service**
**Cumberland County Bar Association**
**2 Liberty Avenue**
**Carlisle, PA 17013**
**(717) 249-3166**
**1-800-990-9108**

TRUE COPY FROM RECORD
In Testimony whereof, I here unto set my hand
and the seal of said Court at Carlisle, Pa.
This ____ day of _May_ _2001_
_Rebecca M. Detrich Otto_
                    Prothonotary

"RECEIVED"
OFFICE OF SHERIFF
YORK, PA
JUN 11 '01 AM 11 47

# AVISO

Usted ha sido domandado en corte. Si usted quiere defenderse en contra de estas demandas, usted debe tomar accion dentro de viente (20) dias despues que esta queja y aviso sean servidos, registrando una comparacencia personalmente o por su abogad y llenando en esccrito en la corte su defensa u objectiones con la corte. **Usted esta advertido que si fallah de hacerlo, el casa puede seguir sin usted y un desicion pued ser registrado en contra suya por la corte sin ningun otra aviso. Ademas, la corte pued decidir a favor del demandante y requiere que usted cumpia con todas las provisiones de esta demanda. Usted puede perder dinero o sus propriedades u otros derechos importante para usted.**
**USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO NO PUEDE PAGAR UNO VAYA O LLAME POR TELEFONO A LA OFFICINA ESCRITA ABAJO PARA AVERIGULAR DONDE USTED PUED CONSEQUIRE ASSISTANCIA LEGAL.**

Cumberland County Lawyer Referral Service
Cumberland County Bar Association
2 Liberty Avenue
Carlisle, PA 17013
(717) 249-3166
1-800-990-9108

In the Court of Common Pleas of Cumberland County, Pennsylvania
Civil Division

| | |
|---|---|
| Michael Shaffer,<br>   Plaintiff,<br><br>  v.<br><br>Susan Graybill as an individual<br>and as Administratrix of the<br>Estate of Dennis M. Graybill,<br>Minuteman Press International,<br>Inc., and Robert Emmett<br>   Defendants. | } No. _____<br>}<br>}<br>}<br>}<br>}<br>} Judge _____<br>}<br>}<br>}<br>}<br>}<br>} Jury Trial Demanded |

### Complaint in Law with Action for Declaratory Judgment

Comes now Plaintiff and complains of each Defendant as follows.

### Parties, Jurisdiction and Venue

1. Plaintiff is Michael Shaffer who resides at 88 Bentz Mill Road, East Berlin, PA 17316.

2. Defendant Susan Graybill is an individual who operated a Minuteman Press franchise in Lemoyne, PA, and may be served in person at 1145 Highland Drive, Mechanicsburg, PA 17055.

3. Defendant Susan Graybill as Administratrix of the Estate of Dennis M. Graybill, deceased, may be served in person at 1145 Highland Drive, Mechanicsburg, PA 17055.

4. Defendant Minuteman Press International, Inc. (hereafter MMPI) is a New York corporation with its home office in Farmingdale, New York. It may be served by certified mail addressed to its registered agent, Peter T. Bauer, General Counsel, Minuteman Press International, Inc., 1640 New Highway, Farmingdale, NY 11735.

5. Defendant Robert Emmett is an individual and representative of MMPI and maintains

an office in Wayne, PA.  He may be served in person at 489 Devon Park Drive, Suite 307,

Wayne, PA 19087.

    6.  The court has jurisdiction over these proceedings because the Minuteman Press

franchise sold to Plaintiff by Defendants Graybill is located in Cumberland County and the

amount in controversy exceeds the minimum jurisdictional amounts of the court.

    7.  The court has venue over these proceedings because all or part of the cause of action

arose in Cumberland County and Defendants Graybill maintained a place of business in

Lemoyne, Cumberland County, PA, and reside in Cumberland County, PA.

### Facts Common to All Counts

    8. On or about August, 2000, Defendants Graybill were operating a Minuteman

Press franchise in Lemoyne under contract with Defendant MMPI. Defendants Graybill were

desirous of selling the franchise to Plaintiff and did so on September 6, 2000.  Plaintiff entered

into various contracts with Defendants Graybill, Defendant MMPI  in pursuance of the purchase

of the franchise.

### Count I

    9.  This count sounds in tort.

    10.  Throughout the relevant time frame alleged in Paragraph 9, all Defendants entered

into a conspiracy with one another to unload a failing business on Plaintiff by agreeing to

materially defraud Plaintiff by falsely inducing him to enter into a contract to purchase and to

purchase the Minuteman Press franchise located in Lemoyne, PA.  Defendant Emmett was the

regional representative of Defendant MMPI and had authority speak for and to bind the

corporation.

11. Defendants Graybill were the owners of the franchise. Defendants Graybill made material misrepresentations as to the financial viability of the franchise and these were made to falsely induce Plaintiff to purchase the Minuteman Press franchise of Lemoyne as an ongoing and viable enterprise with sufficient income to pay expenses and support the store owner and two employees.

12. Defendants Graybill conspired with one another, MMPI and Emmett to represent the Lemoyne franchise as a viable entity that would make a profit and that Plaintiff would start seeing those profits within three months. Defendants Graybill materially misrepresented the financial viability of the Lemoyne franchise. Defendants MMPI and Emmett materially assisted Defendants Graybill to do so. Defendants MMPI and Emmett also made material misrepresentations to induce Plaintiff to purchase the franchise and materially assisted Defendants Graybill in unloading an unprofitable franchise on Plaintiff; these misrepresentations were made by Defendant Emmett, MMPI's regional representative.

13. The following misrepresentations were made by one or more of the Defendants:

a. Defendants Graybill materially misrepresented the financial viability of the Lemoyne franchise by representing that monthly operating expenses were in the range of $7,000.00 when in fact monthly operating expenses were in the range of $12,000.00. Plaintiff expressly obtained copies of the checks written for expenses by the franchise and refused to purchase the franchise because the operating expenses were too high at $12,000.00 per month. Defendant Emmett represented to Plaintiff in response that many of the checks were for personal expenditures and that the operating expenses for the franchise were only $7,000.00 per month. Defendants Graybill confirmed Emmett's misrepresentation. This was a very material factor to Plaintiff because the franchise's monthly income was only in the $5,000.00

range.

   b. Defendant Emmett materially misrepresented the financial viability of the Lemoyne franchise by representing that Plaintiff need earn only $2,000.00 per month over and above what the franchise was bringing in in order to make a profit when in fact Plaintiff needed more than $7,000.00 more per month in gross sales just to break even.

   c. Defendants MMPI and Emmett materially misrepresented to Plaintiff the financial viability of the Lemoyne franchise by making the same representations as set forth in Paragraphs 13a and 13b. Said Defendants conspired with Defendants Graybill to make these misrepresentations.

   d. Defendants MMPI and Emmett materially misrepresented to Plaintiff that he would not only be able to meet expenses within a very short period of time but that he would also realize a gross profit of 30% of gross sales within that same time merely by following MMPI's marketing program, which was to make twenty new contacts per day. Plaintiff did so but was unable to make a profit on the franchise.

   e. Defendants MMPI and Emmett materially misrepresented to Plaintiff that the only reason why the Lemoyne franchise was not already making a profit was because Defendant Dennis M. Graybill, now deceased, was not able due to his poor health to make enough marketing calls to generate additional sales.

   14. Plaintiff was damaged by these misrepresentations in the loss of the amounts that he paid to Defendants Graybill to purchase the franchise, in the amounts that he paid Defendant MMPI for the transfer of the franchise and to attend its school for new owners, and in the loss of working capital and the amounts that had to be borrowed to operate the franchise from month to month. Consequential damages were suffered by Plaintiff in the amounts that he could not earn

because he was devoting his full time to operation of the franchise instead of his former employment as well as amounts he owes to his landlord and Textron Financial Corporation from contracts that were necessitated by his purchase of the franchise. Further consequential damages stemmed from the inevitable loss of credit reputation when he was unable to repay the money he borrowed to keep the franchise operating from month to month.

### Count II

15. On or about September 1, 2000, Plaintiff entered into a written contract with Defendant MMPI which was labeled as the Franchise Agreement. Immediately upon entering the Agreement, Plaintiff was sent to New York for an explanation of what to do to make the franchise viable. He was promised in writing all needed technical assistance and advice. This assistance and advice was based on the express corporate formula that if the franchisee did what MMPI told him to do, he would meet expenses and make a profit. Plaintiff was expressly told by MMPI that all he would have to do was manage the franchise, make twenty cold calls a day, leave all work to the employees, and, by doing so, he would make significant profits. These promises were made in order to induce Plaintiff to enter into the franchise agreement and were again made in the training school in New York. These promises were made in the Franchise Agreement or were made in supplementation of the written agreement or were made in order to induce Plaintiff to enter into the written agreement. In other words, follow our program and you will realize a pretax profit of one third of your gross sales.

16. These promises were breached by MMPI. At no time was the income from the franchise sufficient to even meet expenses and within six months of purchasing the franchise, Plaintiff was forced to close his doors due to excessive expenses.

18. Damages that flow from these breaches of contract and false promises include the

loss of the money that was paid to MMPI to transfer the franchise to Plaintiff and send him to training school in New York. Consequential damages include the loss of what was paid by Plaintiff to the franchise owners to purchase the franchise, the loss of operating capital, the waste of the assets of Plaintiff's franchise, and the various contractual payments needed to pay the landlord and the equipment lessor. Further direct damages resulted from the extreme mental anguish suffered by Plaintiff which were intentionally inflicted as the result of the torts alleged in this Complaint. These damages are in an amount in excess of the minimum jurisdictional limits of the court.

### Count III

19. Defendant MMPI would not transfer the franchise to Plaintiff without first receiving a financial application from the Plaintiff calling for a disclosure of all assets.. After reviewing Plaintiff's financial statements, MMPI caused the sale of the franchise in Lemoyne to Plaintiff and transferred the franchise to Plaintiff and caused him to expend significant amounts for training and for anticipated losses from operation of the franchise within the first three months.

20. Having required Plaintiff to submit a financial application listing all assets of Plaintiff, Defendant MMPI at all times material to this Complaint, knew or should have known that Plaintiff had insufficient income and assets to operate the franchise for even the three months at the end of which Plaintiff was promised that he would be making profits. As the superior bargaining party, MMPI was under a duty to disclose to Plaintiff that he had insufficient income and assets with which to purchase the Lemoyne franchise. This negligence on the part of MMPI caused Plaintiff to suffer not only monetary damages but also an entitlement to damages for extreme emotional distress in amounts in excess of the minimum jurisdictional limits of the court.

20.1.  Plaintiff has further been consequentially damaged by these defendants in an amount in excess of the minimum jurisdictional amount of the court for extreme mental anguish intentionally inflicted upon him as the result of the loss of his life savings.

## Count IV

22.  Each of the torts complained about were committed with such deliberateness and willfulness and in such reckless disregard of the rights of Plaintiff so as to entitle him to punitive damages in an amount in excess of the minimum jurisdictional amounts of the court.

## Incorporation by Reference

23.  Each Count hereof is incorporated in each other Count by reference.  Each Paragraph hereof is incorporated in each other Paragraph by reference.

Wherefore, Plaintiff prays that after trial hereof, he be awarded actual and consequential and punitive damages, each in an amount in excess of the minimum jurisdictional limits of the court against each defendant and against all defendants jointly and severally for their joint misconduct and for such other and further relief in law and in equity to which Plaintiff may be justly entitled.

Respectfully Submitted,

Robert J. White
Counsel for Plaintiff
PBN 32487
PO Box 3005
York, PA 17402
(717) 699-4534
FAX (717) 699-2895

## Verification

I verify that the facts contained in the Complaint are true and correct to the best of my knowledge, information and belief.  I understand that any false statements are made subject to the penalties of 18 Pa.C.S.A. Sec. 4904  relating to unsworn falsification.

May 1, 2001.

Michael Shaffer

EXHIBIT B

## In the Court of Common Pleas of Cumberland County, Pennsylvania
### Civil Division

Michael A. Shaffer  
          Plaintiff,  

     v.  

Susan A. Graybill, et al.,  
          Defendants.  

} No. 01-2664 Civil Term  
}  
}  
}  
} Judge _____  
}  
} Jury Trial Demanded  

### NOTICE TO DEFEND

#### Notice

You have been sued in court. If you wish to defend against these claims, you must take action within twenty (20) days after this complaint and notice are served by entering an appearance personally or by an attorney and filing in writing with the Court your defenses or objections. **You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice. A judgment may also be entered against you for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.**
**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

**York County Lawyer Referral Service**
**137 E. Market Street**
**York, PA 17401**
**(717) 854-8755**

## AVISO

Usted ha sido domandado en corte. Si usted quiere defenderse en contra de estas demandas, usted debe tomar accion dentro de viente (20) dias despues que esta queja y aviso sean servidos, registrando una comparacencia personalmente o por su abogad y llenando en esccrito en la corte su defensa u objectiones con la corte. **Usted esta advertido que si fallah de hacerlo, el casa puede seguir sin usted y un desicion pued ser registrado en contra suya por la corte sin ningun otra aviso. Ademas, la corte pued decidir a favor del demandante y requiere que usted cumpia con todas las provisionés de esta demanda. Usted puede perder dinero o sus propriedades u otros derechos importante para usted.**
**USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO NO PUEDE PAGAR UNO VAYA O LLAME POR TELEFONO A LA OFFICINA ESCRITA ABAJO PARA AVERIGULAR DONDE USTED PUED CONSEQUIRE ASSISTANCIA LEGAL.**

York County Lawyer Referral Service
137 E. Market Street
York, PA 17401
(717) 854-8755

In the Court of Common Pleas of Cumberland County, Pennsylvania
Civil Division

Michael A. Shaffer      } No. 2001-2664 Civil Term
      Plaintiff,      }
                              }
      v.                  }
                              } .
Susan Graybill      }
et al.,                  }
      Defendants      } Jury Trial Demanded

**Plaintiff's First Amended Complaint with Action for Declaratory Judgment**

Comes now Plaintiff and amends his  Complaint with Action for

Declaratory Judgment and states the following additional causes of action:

### Count VI

32.  Plaintiff's  Complaint is incorporated herein by reference, the same

as if fully set forth herein.

33. In the Disclosure Document of Minuteman Press International, Inc. which

which was required by FTC rules and is dated August, 1999, the following disclosure is made on

page 12 about an FTC action against Defendant MMPI and others:

Federal Trade Commission, Plaintiff, v. Minuteman Press International, Inc., Speedy Sign-A-Arama, USA, Inc., Roy W. Titus and Jeffrey Haber, Defendants (CV 93-2496) Filed on June 4, 1993, in the United States District Court, Eastern District of New York. On December 18, 1998, an injunction was filed prohibiting the Defendant's excluding Haber from doing the following: A. Making, or assisting in the making of, expressly or by implication, orally or in writing, to any prospective franchisee any statement of past, present or future sales, income, or gross or net profits of any existing or prospective franchisee or group of franchisees, unless at the time of  making such representation the defendant possesses written material that provides a reasonable basis for the representation. B.Violating any provision of the Rule 16 C.F.R. Part 436 or the rule as it may later be amended and the disclosure requirements of the UFOC in effect at the time.

C. Assessing or collecting a transfer/training fee from any franchisee who sells or assigns its franchise unless the selling franchisee received a copy of a disclosure statement indicating that such fee would be charged. D. Failing to monitor and investigate any complaints about compliance with the rule or the injunction. E. To cooperate with the Commission in the enforcement of this injunction.

Section A of this disclosure relates to precisely the same marketing methods and misrepresentations that are set forth in Counts I through IV of the Plaintiff's Complaint, which are incorporated herein by reference. The disclosure omits material facts and is affirmatively misleading.

34. Defendant MMPI's misrepresentations, omissions, false statements, actions and inactions violate state blue sky laws, federal FTC rules, federal securities laws, the criminal law of the Commonwealth of Pennsylvania, and federal criminal law. Not only has MMPI violated civil law but also criminal law in the manner in which it falsely induced Plaintiff to purchase the existing Minuteman franchise in Lemoyne.

35. Defendant Emmett materially assisted MMPI to do or fail to do those actions set forth in Paragraph 34.

36. Defendants Graybill may or may not have assisted MMPI and Emmett to do or fail to do those actions set forth in Paragraph 34. Defendants Graybill materially assisted Defendants MMPI and Emmett to market by unlawful methods as set forth in Counts I through IV of the Plaintiff's Complaint and has therefore assisted the latter Defendants to violate state blue sky laws, federal FTC rules, and federal securities laws and state and federal criminal laws..

37. In particular, the following written misrepresentations or omissions to state material facts needed to make the misrepresentation true have been made or not made with respect to the Disclosure Statement disclosure of then existing litigation as set forth in Paragraph 33:

a. MMPI and Emmett failed to disclose that the FTC was complaining about the precise marketing methods that MMPI and Emmett used in the marketing of existing franchises to particular franchisees, all as more fully set forth in Counts I through IV, which are incorporated herein by reference.

b. MMPI failed to disclose the full nature and extent of the relief sought by the FTC by omitting all those disclosures set forth in Paragraph 34, in particular the fact that the FTC was attempting to prohibit it from marketing any existing franchise in the manner in which the Lemoyne  franchise was marketed to Plaintiff as more fully set forth in Counts I through IV, which are incorporated herein by reference.

c. Defendants Graybill, MMPI and Emmett failed to disclose to Plaintiff material financial information as required by the FTC request for injunctive relief when Emmettt falsely told Plaintiff that the Graybill expenses to operate the franchise were about $7,000.00 per month and made the other misrepresentations set forth in Counts I through IV.

d. MMPI failed to disclose to Plaintiff that the FTC was alleging that MMPI and others were liable for false and misleading claims about earnings, gross sales and profitability levels. Emmett and unnamed co-conspirators in the home office of MMPI were making those same false and misleading claims to Plaintiff.  Defendants Graybill were materially assisting Emmett to do so.

e. MMPI failed to disclose that the litigation involved FTC claims that it and its officers violated federal consumer protection and franchise disclosure laws

f. MMPI failed to disclose that the FTC was complaining about sales pitches made by MMPI to prospective franchisees about gross earnings and profits they could expect to see by buying and operating MMPI's quick print and sign shops.

g. MMPI failed to disclose that the FTC was seeking hefty monetary damages to those prospective franchisees who suffered monetary damage from the violation of the federal consumer protection and franchise disclosure laws.

h. MMPI failed to disclose that the FTC accused MMPI and its sales force of an unlawful pattern of providing false and unsubstantiated information about earnings to people interested in buying one of MMPI's franchises.

i. MMPI failed to disclose that the FTC was attacking its written disclaimer statement that no earnings claims were made or authorized by MMPI as being unenforceable in the FTC action.

j. MMPI failed to disclose that the contradiction between its written disclaimers and a franchisor's actual practices was a violation of the FTC Act. The actual practices in this case were committed by Defendants Graybill, MMPI and Emmett.and certain unnamed co-conspiratorss in MMPI's home office.

k. MMPI failed to disclose that the FTC was complaining about the common-sense net impression from its actions in marketing its franchises that the purchaser was being furnished important specific earnings claims information to assist in the decision making process, notwithstanding the general disclaimers about earnings..

38. Defendants are therefore estopped from relying on their disclaimer clauses in their contracts with Plaintiff as a defense made to the claims of Plaintiff by collateral estoppel and their own misrepresentations made as part of a common scheme to defraud purchasers of MMPI franchises that the purchaser was being furnished important specific earnings claims information to assist in his decision making process and then forcing the purchaser to·sign a bald faced lie that the precise information had not been provided. Plaintiff. The conspiracy between

Defendants Graybill, Emmett and MPI was so specific that all

Defendants are liable for all misrepresentations and the actions and inactions of one another, the

same as if they had performed the misrepresentations, actions and inactions as an individual.

### Count VII

39. This Count sounds in equity.

40. Plaintiff was presented with a written Franchise Agreement which affirmatively

requires him to seek non-binding arbitration of his claims against MMPI. This clause is a

contract of adhesion, since Plaintiff simply had no bargaining power when he entered into the

Agreement. The contract was dictated by MMPI on a take it or leave it basis; no input from

Plaintiff was permitted; this clause is required of all who wish to purchase a franchise from

MMPI. In addition, under all the circumstances of this case, it would be inequitable to enforce

this provision of the contract because this clause was designed by MMPI to further its unlawful

schemes and activities as set forth in the other Counts of this action

41. Plaintiff aks the court for a declaratory judgment canceling that clause of the contract

and for rescission of the contract.

Wherefore, in addition to the relief requested in Plaintiff's Complaint

with Action for Declaratory Judgment, Plaintiff requests such other and further relief at law and

in equity as arise from these additional Counts together with a declaratory judgment that the

arbitration clause of the MMPI contract with Plaintiff be rescinded.

### Notice to Plead

**Plead to the First Amended Complaint within 20 days of service or default judgment may**

**be entered against you.**

Respectfully Submitted,

Robert J. White
Counsel for Plaintiff
PO Box 3005
York, PA 17402
(717) 699-4534
FAX (717) 699-2895

## Certificate of Service

The undersigned certifies that he has mailed a copy of this First Amended Complaint with Action for Declaratory Judgment to each Defendant on May 19, 2001 by first class mail addressed as follows:
MMPI by serving Peter T. Bauer, General Counsel, Minuteman Press International, Inc., 1640 New Highway, Farmingdale, NY 11735
Defendant Robert Emmett at 489 Devon Park Drive, Suite 307, Wayne, PA 19087

Robert J. White

## Verification

I verify that the facts contained in this First Amended Complaint with Action for Declaratory Judgment are true and correct to the best of my knowledge, information and belief. I understand that any false statements are made subject to the penalties of 18 Pa.C.S.A. Sec. 4904 relating to unsworn falsification.

_____
Michael Shaffer

# EXHIBIT C

## SALE OF ASSETS AGREEMENT

This Sale of Assets Agreement is entered into this $\underline{1^{ST}}$ day of SEPTEMBER 2000, by and among Dennis M. Graybill ("Seller"), and MICHAEL A. SHAFFER ("Purchaser").  SUSAN D. GRAYBILL

WHEREAS, the Seller covenants that it is the owner of the printing business, fixtures and equipment, good will, trade name and franchise rights of MINUTEMAN PRESS; and

WHEREAS, the Seller desires to sell to Buyer, and the Buyer desires to purchase, the said printing business, consisting of the business, fixtures and equipment as described in Schedule "A" attached hereto and made a part hereof, as well as the good will, trade name and franchise rights of the said printing business.

NOW THEREFORE, IT IS AGREED AS FOLLOWS, all parties intending to be legally bound hereby:

Section 1.      Assets Purchased; Liabilities Assumed.

1.1  Assets Purchased.  Seller agrees to sell to Purchaser and Purchaser agrees to purchase from Seller, on the terms and conditions set forth in this Agreement, the assets set forth on Exhibit A hereto ("Assets").

1.2  Liabilities Assumed.  Purchaser shall accept the assignment and prepayments and assume responsibility for all unfilled orders from customers of Seller assigned to Purchaser pursuant to Section 1.1, shall assume responsibility of payment for purchase orders for inventory items that have been placed by Seller prior to the Closing Date but that will not be delivered until after the Closing Date.

Section 2.      Excluded Assets.  Excluded from this sale and purchase are Seller's accounts receivable, cash, notes and contracts receivable, prepaid expenses, prepaid taxes, and any other assets of the business not specified in Section 1.1.

Section 3.      Purchase Price for Assets.  The purchase price for the Assets shall be $50,000.00, subject to any adjustments calculated as of the date of Closing, as set forth herein, and allocated as set forth in Exhibit A.

Section 4.      Payment of Purchase Price.  The price for the

PAGE 1 - SALE OF ASSETS AGREEMENT

Assets shall be paid as follows:

    4.1  On the date of the signing of this Agreement, $2500.00
by cashier's check or certified funds, to be held in escrow by
Seller's attorney as security for the performance of Purchaser's
obligations hereunder.

    4.2  Purchaser shall pay the balance of the Purchase Price
in 84 equal monthly installments of principal and interest,
calculated at the rate of 10% per annum beginning November 1,
2000.  Payment of the price shall be secured by a promissory
judgment note executed by buyer, and any sureties or guarantors
as may be reasonably requested by Seller.

Section 5.    Adjustments.  The operation of Seller's business
and related income and expenses up to the close of business on
the Closing Date shall be for the account of Seller and
thereafter for the account of Purchaser.  Expenses, including but
not limited to utilities, wages, vacation pay, payroll taxes, and
fringe benefits of employees of Seller, shall be prorated between
Seller and Purchaser as of the close of business on the Closing
Date, the proration to be made and paid, insofar as reasonably
possible, on the Closing Date, with settlement of any remaining
items to be made within 30 days following the Closing Date.

Section 6.    Other Agreements.  At Closing, the parties shall
execute the following additional agreements: (1) Assignment or
other appropriate document for the assumption of the obligations
of seller for the existing office space lease; (2) Assignments,
or other appropriate document(s) for the assumption of equipment
leases; and (3) any other appropriate and necessary documents for
the consummation of this agreement.

Section 7.    Representations of Purchaser.  Purchaser
represents and warrants as follows:

    7.1  Brokers and Finders.  Purchaser has not employed any
broker or finder in connection with the transaction contemplated
by this Agreement and has taken no action that would give rise to
a valid claim against any party for a brokerage commission,
finder's fee, or other like payment.

    7.2  Noncancellable Contracts.  Seller represents that at
the time of Closing, there will be no material leases, employment
contracts, contracts for services or maintenance, or other

PAGE 2 - SALE OF ASSETS AGREEMENT

similar contracts existing or relating to or connected with the
operation of Seller's business not cancelable within 30 days,
except those Agreements listed on ~~Exhibit D~~.

    7.3  Litigation.  Seller has no knowledge of any claim,
litigation, proceeding, or investigation pending or threatened
against Seller that might result in any material adverse change
in the business or condition of Assets being conveyed under this
Agreement.


Section 8.      Covenants of Purchaser.

    8.1  Conditions and Best Efforts.  Purchaser will use its
best efforts to effectuate the transactions contemplated by this
Agreement and to fulfill all the conditions of Purchaser's
obligations under this Agreement, and shall do all acts and
things as may be required to carry out Purchaser's obligations
and to consummate this Agreement.

    8.2  Confidential Information.  If for any reason the sale
of Assets is not closed, Purchaser will not disclose to third
parties any confidential information received from Seller in the
course of investigating, negotiating, and performing the
transactions contemplated by this Agreement.  Purchaser may
disclose to potential corporate lenders such of Seller's
confidential financial information as the lender may reasonably
require, upon lender agreeing to the terms of the confidentiality
agreement between Seller and Purchaser.

Section 9.      Purchaser's Acceptance.  Purchaser represents and
acknowledges that it has entered into this Agreement on the basis
of its own examination, personal knowledge, and opinion of the
value of the assets.  Purchaser has not relied on any
representations made by Seller other than those specified in this
Agreement.  Purchaser further acknowledges that neither Seller n
has made any agreement or promise to repair or improve any of the
assets or other personal property being sold to Purchaser under
this Agreement, and that Purchaser takes all such property in the
condition existing on the date of this Agreement, except as
otherwise provided in this Agreement.

Section 10.     Risk of Loss.  The risk of loss, damage, or
destruction to any of the equipment, inventory, or other loss,
damage, or destruction, shall be borne by Seller to the time of
Closing. In the event of such loss, damage, or destruction,
Seller shall replace the lost property or cause the damaged

PAGE 3 - SALE OF ASSETS AGREEMENT

property to be restored to its condition prior to the damage.  If replacement, repairs, or restorations are not completed prior to Closing, then the purchase price shall be adjusted by an amount agreed upon by Purchaser and Seller as necessary to complete the replacement, repair, or restoration following Closing.  If Purchaser and Seller are unable to agree, then Purchaser, at its sole option and notwithstanding any other provision of this Agreement, upon notice to Seller, may rescind this Agreement and declare it to be of no further force and effect, in which event there shall be no Closing of this Agreement and all the terms and provisions of this Agreement shall be deemed null and void, and escrowed monies shall be refunded.

Section 11.    <u>Indemnification and Survival</u>.

11.1 <u>Survival of Representations and Warranties</u>.  All representations and warranties made in this Agreement shall survive the Closing of this Agreement, except that any party to whom a representation or warranty has been made in this Agreement shall be deemed to have waived any misrepresentation or breach of representation or warranty of which such party had knowledge prior to Closing.  Any party learning of a misrepresentation or breach of representation or warranty under this Agreement shall immediately give written notice thereof to all other parties to this Agreement.  The representations and warranties in this Agreement shall terminate six months from the Closing Date, and such representations or warranties shall thereafter be without force or effect, except any claim with respect to which notice has been given to the party to be charged prior to such expiration date.

11.2 <u>Purchaser's Indemnification</u>.  Purchaser agrees to defend, indemnify, and hold harmless Seller  from and against:

11.2.1  Any and all claims, liabilities, and obligations of every kind and description arising out of or related to the operation of the business following Closing or arising out of Purchaser's failure to perform obligations of Seller assumed by Purchaser pursuant to this Agreement.

11.2.2 Any and all damage or deficiency resulting from any material misrepresentation, breach of warranty or covenant, or nonfulfillment of any agreement on the part of Purchaser under this Agreement.

11.3 <u>Covenant Not to Compete</u>. Seller  covenant not to engage in any business substantially similar to "Seller's Business" for

PAGE 4 - SALE OF ASSETS AGREEMENT

08/29/00 TUE 16:04 FAX 2⁓⁓0791          MILSPAW & BESHORE          ☑006

in the same territory in which Seller currently operates for a
period of three (3) years or within a radius of 10 miles from the
Seller's present principal office.

Section 12.    Closing.

    12.1 Time and Place.  This Agreement shall be closed at the
offices of Milspaw & Beshore in Harrisburg, Pa., on or before  ,
2000, effective close of business on , 2000, or at such other
time as the parties may agree in writing, time being of the
essence.

    12.2 Obligations of Seller at the Closing.  At the Closing
and coincidentally with the performance by Purchaser of its
obligations described in this agreement, Seller  shall deliver to
Purchaser all documents necessary to meet its obligations
hereunder.

    12.3 Obligations of Purchaser at the Closing.  At the
Closing and coincidentally with the performance by Seller  of
their obligations described in this agreement, Purchaser shall
deliver to Seller all documents necessary to meet its obligations
hereunder.

Section 13.    Rights and Obligations Subsequent to Closing.

    13.1 Books and Records.  This sale does not include the
books of account and records of Seller's business.  However, the
sale does include customer records pertaining to day to day
operations, service records, delivery receipts, warranty records,
and customer lists. Purchaser will exercise reasonable care in
the safekeeping of such records.


Section 14.    Default.

    14.1 Seller Remedies.  If Purchaser fails to perform any of
the terms, covenants, conditions, or obligations of this
Agreement, time of payment and performance being of the essence,
then Seller, subject to the requirements of the notice provided
herein, may have any or all of the following remedies:

    14.1.1    Pre-closing or post-closing, the right to
specifically enforce Purchaser's obligations.

    14.1.2    Pre-closing, the right to receive from Purchaser
the sum of $5000.00 as liquidated damages, retaining the escrowed

PAGE 5 - SALE OF ASSETS AGREEMENT

monies for such purpose, and declare this agreement null and void
and of no further force or effect.

14.1.3    Post-closing, the right to confess judgment for
any amount remaining due at the time of default and to execute
upon that judgment.

14.2    Purchaser Remedies.  If Seller fails to perform
any of the terms, covenants, conditions, or obligations of this
Agreement, time of payment and performance being of the essence,
then Purchases, subject to the requirements of the notice
provided herein, may have any or all of the following remedies:

14.2.1    Pre-closing and post-closing, the right to
specifically enforce Seller's obligations.

14.3 Notice of Default.  Neither party shall not be deemed
in default for failure to perform the terms, covenants, and
conditions of this Agreement, until notice of the default has
been given to the defaulting party and the default has not been
remedied within thirty days after the notice.


Section 15.    Miscellaneous Provisions.

15.1 Amendment and Modification.  Subject to applicable law,
this Agreement may be amended, modified, or supplemented only by
a written agreement signed by all of the parties hereto.

15.2 Notices.  All notices, requests, demands, and other
communications required or permitted hereunder will be in writing
and will be deemed to have been duly given when delivered by hand
or two days after being mailed by certified or registered mail,
return receipt requested, with postage prepaid:

If to Purchaser, to:  *Michael A. Shaffer*

Copy to:

or to such other person or address as Purchaser shall furnish to
Seller  pursuant to the above.

If to Seller to:    Dennis M. Graybill




PAGE 6 - SALE OF ASSETS AGREEMENT

Copy to:      Marvin Beshore, Esquire
              130 State Street
              Harrisburg, Pa.  17101

or to such other address as Seller  furnish to Purchaser pursuant
to the above.

15.3 <u>Attorney Fees</u>.  In the event an arbitration, suit or
action is brought by any party under this Agreement to enforce
any of its terms, or in any appeal therefrom, it is agreed that
the prevailing party shall be entitled to reasonable attorneys
fees to be fixed by the arbitrator, trial court, and/or appellate
court.

15.4 <u>Law Governing</u>.  This Agreement shall be governed by and
construed in accordance with the laws of the Commonwealth of
Pennsylvania.

15.5 <u>Computation of Time</u>.  In computing any period of time
pursuant to this Agreement, the day of the act, event or default
from which the designated period of time begins to run shall be
included, unless it is a Saturday, Sunday or a legal holiday, in
which event the period shall begin to run on the next day which
is not a Saturday, Sunday or legal holiday.

15.6 <u>Titles and Captions</u>.  All section titles or captions
contained in this Agreement are for convenience only and shall
not be deemed part of the context nor affect the interpretation
of this Agreement.

15.7 <u>Pronouns and Plurals</u>.  All pronouns and any variations
thereof shall be deemed to refer to the masculine, feminine,
neuter, singular or plural as the identity of the person or
persons may require.

15.8 <u>Entire Agreement</u>.  This Agreement contains the entire
understanding between and among the parties and supersedes any
prior understandings and agreements among them respecting the
subject matter of this Agreement.  Any amendments to this
Agreement must be in writing and signed by the party against whom
enforcement of that amendment is sought.

15.9 <u>Agreement Binding</u>.  This Agreement shall be binding
upon the heirs, executors, administrators, successors and assigns
of the parties hereto.

PAGE 7 - SALE OF ASSETS AGREEMENT

15.10 <u>Presumption</u>.  This Agreement or any Section thereof shall not be construed against any party due to the fact that said Agreement or any Section thereof was drafted by said party.

15.11 <u>Further Action</u>.  The parties hereto shall execute and deliver all documents, provide all information and take or forbear from all such action as may be necessary or appropriate to achieve the purpose of the Agreement.

15.12 <u>Counterparts</u>.  This Agreement may be executed in several counterparts and all so executed shall constitute one Agreement, binding on all the parties hereto even though all the parties are not signatories to the original or the same counterpart.

15.13 <u>Parties in Interest</u>.  Nothing herein shall be construed to be to the benefit of any third party, nor is it intended that any provision shall be for the benefit of any third party.

15.14 <u>Savings Clause</u>.  If any provision of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby.


16.  <u>Consulting Agreement</u> Purchaser shall hire Seller effective the date of closing as a consultant to the business and shall pay him a sum equal to $_____ for the first year from the date of closing for up to _____ hours of consulting, to be performed during normal business hours of Purchaser, payable monthly.

PAGE 6 - SALE OF ASSETS AGREEMENT

In Witness whereof, the parties have set or caused to be set their hands and seals the day and year first above written.

ATTEST:                              PURCHASER:


_____              *Michael A Shaff*


ATTEST:                              SELLER:


_____              *Dennis M. Graybill*
                                     Dennis M. GRAYBILL
                                     *Susan A Graybill*



        Attached Exhibits:

                A - List of Assets

                B-  Lease

                C - List of cancelable contracts



PAGE 9 - SALE OF ASSETS AGREEMENT

Schedule "A"

## EQUIPMENT DESCRIPTION LIST

Computer Workstation
Color Computer Monitor
Laserjet Printer
Software
One Model 1650 XE-CD AM International Offset Press
One 1650 Model Swing-Away Second Color Head
Multi-Installed Kompac Automatic Dampener System
One SP 990 Photo-Direct Silver Platemaker System
Metal Platemaker/Mercury Printer
Plate Punch
Light Table
Precision Paper Cutter
Automatic Air/Suction Feed Folder
Paper Drill
Electric Saddle Stapler
Padder
Three Steel Work Tables
Neon Sign Package
Window Graphics Package
Front Lobby Service Counter
File Cabinet
Two Six-Foot Folding Tables
Lobby Furniture
Desk
Secretarial Chair
Steel Shelving

PAGE 10 - SALE OF ASSETS AGREEMENT