

Robert J. White
PBN 32487
[650 W. Market Street]
PO Box 3005
York, PA 17402
(717) 699-4534
Counsel for Plaintiff

## In the United States District Court for the Middle District of Pennsylvania

| | |
|---|---|
| **Michael A. Shaffer,** | } **Civil Action No. 01-CV-1065** |
| **Plaintiff,** | } |
| | } **(Judge Rambo)** |
| **v.** | } |
| | } |
| **Susan Graybill, et al.,** | } |
| **Defendants.** | } |

### Memorandum of Law of Plaintiff Michael A. Shaffer
### In Opposition to
### Defendants Graybills' Motion to Dismiss

Comes now Plaintiff and files this Memorandum of Law in opposition to the Motion to Dismiss of Defendant Susan Garybill as an individual and Defendant Susan Graybill as Executrix of the Estate of Dennis M. Graybill, deceased.

### Procedural Matters

1. Plaintiff filed a Complaint and a First Amended Complaint complaining about fraudulent activities of the Graybill Defendants and also against Minuteman Press International, Inc. and Robert Emmett. See Exh. A and B attached hereto.

2. The case was filed in the Court of Common Pleas of Cumberland County, Pennsylvania, and removed to the Middle District by the MMPI Defendants. The MMPI

1

Defendants filed a Motion to Dismiss, to which a Response Brief was filed by Plaintiff, and the MMPI Defendants have already filed their Reply.  On July 16, 2001, the Graybill Defendants filed their own Motion to Dismiss.

### Waiver of Misrepresentations Clause

3, The Graybill Defendants first argue that pursuant to the Sales Agreement, Exh. C, entered into between Plaintiff and the Graybill Defendants on September 1, 2000, that Plaintiff cannot maintain his action for fraudulent inducement because the Sales Agreement contains a clause that states that no representations, other than as set forth in the Sales Agreement,  were made.

4.  This position is erroneous as a matter of contract law.  Plaintiff has not brought an action on the Sales Agreement against the Graybill Defendants.  Rather, he has brought a cause of action against them that states that the Graybills misrepresented the expenses of the Minuteman franchise in Lemoyne, which they sold to him, knowing that he had insufficient money and assets to operate a franchise which was losing money for a time period long enough to turn the franchise around and make a profit.  Exh. A.

5. The Sales Agreement covers only the sale of tangible business equipment necessary to operate a printing business to Plaintiff.  Plaintiff does not contest anything in the Sales Agreement itself, not the value of the assets nor any other matter relating to the sales of business equipment, which are the only matters that the Sales Agreement was designed to cover.  The cited clause simply does not cover the matters about which Plaintiff complains.

### The Hold Harmless Clause

6.  Similarly, the Defendants argue that the hold harmless clause of the Sales Agreement

2

operates as a bar to Plaintiff's action because Plaintiff agree to hold the Graybills harmless from all damages arising from the operation of the business after the Sales Agreement was consummated.

7.  However, Plaintiff is not claiming any damages from the operation of the business against the Graybills.  Again, his claims focus on the fact that the Graybills, after point blank questioning, told him that the business operating expenses of the franchise for the period prior to entry into the Sales Agreement were only $7,000.00 per month instead of actual expenses of $12,000.00 per month.  Had the expense representation been true, and had the marketing program of the MMPI Defendants been as represented, Plaintiff fully expected to cover operating expenses within a few months.  The distinction is very material to Plaintiff since gross income from the disclosed sales of the business prior to entry into the Sales Agreement averaged only $5,000.00 per month and Plaintiff simply did not have the financial wherewithal to absorb the actual expenses of the business over and above what the Graybills had represented to him.

**The Dead Man's Act**

8.  At this point in the proceedings, Plaintiff has averred nothing to which the Pennsylvania Dead Man's Act can apply.  His allegations do not require the necessity of any words from Dennis M. Graybill's mouth.  Rather, he pleads that both Defendants Graybill uttered the misrepresentations that he set forth in Para. 13a of Exh. A.  It would appear then that testimony relating to what the deceased may have told Plaintiff can as easily come from Defendant Mrs. Graybill as the Plaintiff, Certainly, the Dead Man's Act does not apply to misrepresentations made by Defendant Mrs. Graybill.

9.  Defendant's case doesn't apply under this factual scenario.  It was a probate

proceeding and in any event the challenged witness was allowed to testify. In addition, the

burden of proof is on a party challenging the competency of a witness and Defendants haven't

even developed a factual record yet. Also, Defendant Mrs. Graybill is defending the action in her

own right and Plaintiff's allegations regard a jointly owned franchise. See P.L.E., Sec. 61 et seq;

74, 75, 79.

### The Fraud Claims

10. Defendants next complain that the who, what, when and where of the fraud have not

been pled with sufficient particularity.

11. There is controlling Third Circuit precedent on the precise point raised by the

Defendants that the who, what, when and where of the fraud alleged in this case have not been

specified with particularity. In Seville Industrial Machinery Corp. v. Southmost Machinery

Corp., 742 F.2d 786, at 791 (3rd Cir. 1984), the court stated:

> It is certainly true that allegations of 'date, place or time' fulfill these functions
> [particularity of the circumstances of the alleged fraud], but nothing in the rule [9(b)]
> requires them. Plaintiffs are free to use alternative means of injecting precision and
> some measure of substantiation into their allegations of fraud.

All that is needed is that the complaint set forth Plaintiff's claims with sufficient detail to allow

Defendant to answer and prepare for trail. Waldo v. North American Van Lines, Inc., 669

F.Supp. 722 (W.D.Pa. 1987). Plaintiff has done this in Exh. A.

12. In this respect, Plaintiff has pled in Para. 13 a of Exh. A that Defendants Graybill

materially misrepresented the financial viability of the franchise by misrepresenting that monthly

operating expenses were $5,000.00 per month less than the actual $12,000.00 per month in

operating expenses with full knowledge that Plaintiff was refusing to purchase the franchise with

4

them if the actual operating expenses were that high and that the franchise's monthly income was averaging only $5,000.00 per month. This is the highly specific type of pleading that sustains an averment of fraud in the inducement and material misrepresentation. In addition, it is also pled that the Graybill Defendants further misrepresented that many of the checks from which the Plaintiff noticed that expenses were reaching $12,000.00 per month were for personal expenditures.

### Civil Conspiracy

13. While Defendants complain that Plaintiff has not averred malice for civil conspiracy, Exh. A complains about willful and deliberate actions on the part of the Defendants. Malice is necessarily inferred from the totality of the pleadings and all inefrence must be drawn in the light most favorable to the Plaintiff. Pennsylvania House, Inc. v. Barrett, 760 F.Supp. 439, 449 (M.D.Pa. 1991). When Defendants deliberately misrepresent expenses in the operation of the business which they are selling to Plaintiff in order to induce him to purchase a business which is losing money on a regular basis, the intent to injure and the lack of justification are present.

### Negligence Claims

14. Plaintiff is not alleging negligence against the Graybill Defendants. Plaintiff is alleging willful and deliberate acts of fraud against the Graybill Defendants.

### Emotional Distress

15. The cases cited by the Defendants acknowledge that even breach of contract can give rise to a claim for intentional or negligent infliction of emotional distress where the breach is of such a kind that serious emotional disturbance is likely to result. While no Pennsylvania case has ruled on the issue, the Restatement (2nd) certainly contemplates the eventuality.

16.  The facts that the Defendants knew, not only that they were unloading a failing business on Plaintiff, but also that they knew that Plaintiff did not have nearly enough investment money to meet expenses, let alone operate the business long enough to make it profitable, certainly show that it was within the contemplation of the Defendants that the resulting emotional disturbance would result and Plaintiff is making a good faith argument for the extension of existing Pennsylvania law on the issue.

### Punitive Damages

17.  Plaintiff concedes that an action for punitive damages is not an independent cause of action.  Nonetheless, the pleading must stand, although not as a separate count, because under all the facts and circumstances of this case, Defendant's actions were outrageous and even criminal.

18.  The Graybill Defendants knew that they would ruin Plaintiff's life by selling him a franchise which he could barely afford to purchase let alone operate for a sufficiently long period to turn a profit and sold it to him anyway.  That offense is compounded by the fact that they willfully misrepresented expense figures prior to their sale of the franchise to him, making it that much more likely that, in the words of Plaintiff, "They set me up to fail."   This is the type of conduct that deserves to be deterred and punished.  Pa. Standard Jury Instructions, Sec. 1400.

### Technical Requirements of Pleading of Civil Conspiracy and Fraud or Misrepresentation

19.  Defendants have cited some cases that indicate Plaintiff did not plead the technically required elements of fraud, misrepresentation and civil conspiracy in the precise elements set forth in the cited cases.  Since Plaintiff is entitled to the inferences of his pleadings, he does not believe that the technical requirements need to be met.  However, there is no technical

6

requirement in the cited cases that cannot be met with an amended pleading and the accompanying motion to amend.

Wherefore, Plaintiff prays that the Graybill Defendants' Motion to Dismiss be denied and that Plaintiff be granted such relief at law or in equity to which he is justly entitled, including the right to amend if the court so orders.

Respectfully Submitted,

Robert J. White
Counsel for Plaintiff

### Certificate of Service

The undersigned certifies that he has served a copy of this Response Brief on counsel for Defendants Graybill, Charles Rees Brown, Nicholas and Foreman, 4409 N. Front Street, Harrisburg, PA 17110 and on counsel for the MMPI Defendants, Harris Chernow, Eleven Penn Center, 14th Floor, 1835 Market Street, Philadelphia, PA 19103 by first class mail on this 2 0 day of August, 2001.

Robert J. White

7

**In the Court of Common Pleas of Cumberland County, Pennsylvania**
**Civil Division**

| | |
|---|---|
| Michael A. Shaffer | } No. 2001-2664 Civil Term |
|           Plaintiff, | } |
| | } |
|    v. | } |
| | } |
| Susan Graybill | } |
| et al., | } |
|         Defendants | } Jury Trial Demanded |

**Plaintiff's First Amended Complaint with Action for Declaratory Judgment**

Comes now Plaintiff and amends his Complaint with Action for

Declaratory Judgment and states the following additional causes of action:

**Count VI**

32. Plaintiff's Complaint is incorporated herein by reference, the same

as if fully set forth herein.

33. In the Disclosure Document of Minuteman Press International, Inc. which

which was required by FTC rules and is dated August, 1999, the following disclosure is made on

page 12 about an FTC action against Defendant MMPI and others:

> Federal Trade Commission, Plaintiff, v. Minuteman Press International, Inc., Speedy
> Sign-A-Arama, USA, Inc., Roy W. Titus and Jeffrey Haber, Defendants (CV 93-2496)
> Filed on June 4, 1993, in the United States District Court, Eastern District of New York.
> On December 18, 1998, an injunction was filed prohibiting the Defendant's excluding
> Haber from doing the following: A. Making, or assisting in the making of, expressly or
> by implication, orally or in writing, to any prospective franchisee any statement of past,
> present or future sales, income, or gross or net profits of any existing or prospective
> franchisee or group of franchisees, unless at the time of making such representation the
> defendant possesses written material that provides a reasonable basis for the
> representation. B.Violating any provision of the Rule 16 C.F.R. Part 436 or the rule as it
> may later be amended and the disclosure requirements of the UFOC in effect at the time.

C. Assessing or collecting a transfer/training fee from any franchisee who sells or assigns its franchise unless the selling franchisee received a copy of a disclosure statement indicating that such fee would be charged. D. Failing to monitor and investigate any complaints about compliance with the rule or the injunction. E. To cooperate with the Commission in the enforcement of this injunction.

Section A of this disclosure relates to precisely the same marketing methods and misrepresentations that are set forth in Counts I through IV of the Plaintiff's Complaint, which are incorporated herein by reference. The disclosure omits material facts and is affirmatively misleading.

34. Defendant MMPI's misrepresentations, omissions, false statements, actions and inactions violate state blue sky laws, federal FTC rules, federal securities laws, the criminal law of the Commonwealth of Pennsylvania, and federal criminal law. Not only has MMPI violated civil law but also criminal law in the manner in which it falsely induced Plaintiff to purchase the existing Minuteman franchise in Lemoyne.

35. Defendant Emmett materially assisted MMPI to do or fail to do those actions set forth in Paragraph 34.

36. Defendants Graybill may or may not have assisted MMPI and Emmett to do or fail to do those actions set forth in Paragraph 34. Defendants Graybill materially assisted Defendants MMPI and Emmett to market by unlawful methods as set forth in Counts I through IV of the Plaintiff's Complaint and has therefore assisted the latter Defendants to violate state blue sky laws, federal FTC rules, and federal securities laws and state and federal criminal laws..

37. In particular, the following written misrepresentations or omissions to state material facts needed to make the misrepresentation true have been made or not made with respect to the Disclosure Statement disclosure of then existing litigation as set forth in Paragraph 33:

a.  MMPI and Emmett failed to disclose that the FTC was complaining about the precise marketing methods that MMPI and Emmett used in the marketing of existing franchises to particular franchisees, all as more fully set forth in Counts I through IV, which are incorporated herein by reference.

b.  MMPI failed to disclose the full nature and extent of the relief sought by the FTC by omitting all those disclosures set forth in Paragraph 34, in particular the fact that the FTC was attempting to prohibit it from marketing any existing franchise in the manner in which the Lemoyne  franchise was marketed to Plaintiff as more fully set forth in Counts I through IV, which are incorporated herein by reference.

c.  Defendants Graybill, MMPI and Emmett failed to disclose to Plaintiff material financial information as required by the FTC request for injunctive relief when Emmettt falsely told Plaintiff that the Graybill expenses to operate the franchise were about $7,000.00 per month and made the other misrepresentations set forth in Counts I through IV.

d.  MMPI failed to disclose to Plaintiff that the FTC was alleging that MMPI and others were liable for false and misleading claims about earnings, gross sales and profitability levels. Emmett and unnamed co-conspirators in the home office of MMPI were making those same false and misleading claims to Plaintiff.  Defendants Graybill were materially assisting Emmett to do so.

e.  MMPI failed to disclose that the litigation involved FTC claims that it and its officers violated federal consumer protection and franchise disclosure laws

f.  MMPI failed to disclose that the FTC was complaining about sales pitches made by MMPI to prospective franchisees about gross earnings and profits they could expect to see by buying and operating MMPI's quick print and sign shops.

g.  MMPI failed to disclose that the FTC was seeking hefty monetary damages to those prospective franchisees who suffered monetary damage from the violation of the federal consumer protection and franchise disclosure laws.

h.  MMPI failed to disclose that the FTC accused MMPI and its sales force of an unlawful pattern of providing false and unsubstantiated information about earnings to people interested in buying one of MMPI's franchises.

i.  MMPI failed to disclose that the FTC was attacking its written disclaimer statement that no earnings claims were made or authorized by MMPI as being unenforceable in the FTC action.

j. MMPI failed to disclose that the contradiction between its written disclaimers and a franchisor's actual practices was a violation of the FTC Act.  The actual practices in this case were committed by Defendants Graybill, MMPI and Emmett.and certain unnamed co-conspiratorss in MMPI's home office.

k.  MMPI failed to disclose that the FTC was complaining about the common-sense net impression from its actions in marketing its franchises that the purchaser was being furnished important specific earnings claims information to assist in the decision making process, notwithstanding the general disclaimers about earnings..

38.  Defendants are therefore estopped from relying on their disclaimer clauses in their contracts with Plaintiff as a defense made to the claims of Plaintiff by collateral estoppel and their own misrepresentations made as part of a common scheme to defraud purchasers of MMPI franchises that the purchaser was being furnished important specific earnings claims information to assist in his decision making process and then forcing the purchaser to sign a bald faced lie that the precise information had not been provided.  Plaintiff.  The conspiracy between

Defendants Graybill, Emmett and MPI was so specific that all

Defendants are liable for all misrepresentations and the actions and inactions of one another, the

same as if they had performed the misrepresentations, actions and inactions as an individual.

### Count VII

39. This Count sounds in equity.

40. Plaintiff was presented with a written Franchise Agreement which affirmatively

requires him to seek non-binding arbitration of his claims against MMPI. This clause is a

contract of adhesion, since Plaintiff simply had no bargaining power when he entered into the

Agreement. The contract was dictated by MMPI on a take it or leave it basis; no input from

Plaintiff was permitted; this clause is required of all who wish to purchase a franchise from

MMPI. In addition, under all the circumstances of this case, it would be inequitable to enforce

this provision of the contract because this clause was designed by MMPI to further its unlawful

schemes and activities as set forth in the other Counts of this action

41. Plaintiff aks the court for a declaratory judgment canceling that clause of the contract

and for rescission of the contract.

Wherefore, in addition to the relief requested in Plaintiff's Complaint

with Action for Declaratory Judgment, Plaintiff requests such other and further relief at law and

in equity as arise from these additional Counts together with a declaratory judgment that the

arbitration clause of the MMPI contract with Plaintiff be rescinded.

### Notice to Plead

**Plead to the First Amended Complaint within 20 days of service or default judgment may**

**be entered against you.**

Respectfully Submitted,


Robert J. White
Counsel for Plaintiff
PO Box 3005
York, PA 17402
(717) 699-4534
FAX (717) 699-2895

## Certificate of Service


    The undersigned certifies that he has mailed a copy of this First Amended Complaint with Action for Declaratory Judgment to each Defendant on May 19, 2001 by first class mail addressed as follows:

MMPI by serving Peter T. Bauer, General Counsel, Minuteman Press International, Inc., 1640 New Highway, Farmingdale, NY 11735

Defendant Robert Emmett at 489 Devon Park Drive, Suite 307, Wayne, PA 19087

/s/
_____
Robert J. White

## Verification


I verify that the facts contained in this First Amended Complaint with Action for Declaratory Judgment are true and correct to the best of my knowledge, information and belief.  I understand that any false statements are made subject to the penalties of 18 Pa.C.S.A. Sec. 4904 relating to unsworn falsification.

/s/
_____
Michael Shaffer

In the Court of Common Pleas of Cumberland County, Pennsylvania
Civil Division

Michael A. Shaffer,                    } No. 01- 2664 Civil Term
         Plaintiff,                     }
                                        }
         v.                             }
                                        } Judge _____
Susan Graybill as an individual         }
and as Administratrix of the            }
Estate of Dennis M. Graybill;           }
Minuteman Press                         }
International, a New York corpor-        }
ation; and Robert Emmett                }
         Defendants.                    } Jury Trial Demanded

### NOTICE TO DEFEND

#### Notice

You have been sued in court. If you wish to defend against these claims, you must take action
within twenty (20) days after this complaint and notice are served by entering an appearance
personally or by an attorney and filing in writing with the Court your defenses or objections. **You
are warned that if you fail to do so the case may proceed without you and a judgment may
be entered against you by the court without further notice. A judgment may also be
entered against you for any other claim or relief requested by the plaintiff. You may lose
money or property or other rights important to you.**
**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT
HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE
OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

**Cumberland County Lawyer Referral Service**
**Cumberland County Bar Association**
**2 Liberty Avenue**
**Carlisle, PA 17013**
**(717) 249-3166**
**1-800-990-9108**

## AVISO

Usted ha sido domandado en corte. Si usted quiere defenderse en contra de estas demandas, usted debe tomar accion dentro de viente (20) dias despues que esta queja y aviso sean servidos, registrando una comparacencia personalmente o por su abogad y llenando en esccrito en la corte su defensa u objectiones con la corte.  **Usted esta advertido que si fallah de hacerlo, el casa puede seguir sin usted y un desicion pued ser registrado en contra suya por la corte sin ningun otra aviso. Ademas, la corte pued decidir a favor del demandante y requiere que usted cumpia con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propriedades u otros derechos importante para usted.**
**USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO NO PUEDE PAGAR UNO VAYA O LLAME POR TELEFONO A LA OFFICINA ESCRITA ABAJO PARA AVERIGULAR DONDE USTED PUED CONSEQUIRE ASSISTANCIA LEGAL.**

Cumberland County Lawyer Referral Service
Cumberland County Bar Association
2 Liberty Avenue
Carlisle, PA 17013
(717) 249-3166
1-800-990-9108

### In the Court of Common Pleas of Cumberland County, Pennsylvania
### Civil Division

| | |
|---|---|
| Michael Shaffer, | } No. _____ |
|        **Plaintiff,** | } |
| | } |
|     **v.** | } |
| | } |
| Susan Graybill as an individual | } Judge _____ |
| and as Administratrix of the | } |
| Estate of Dennis M. Graybill, | } |
| Minuteman Press International, | } |
| Inc., and Robert Emmett | } |
|        **Defendants.** | } **Jury Trial Demanded** |

### Complaint in Law with Action for Declaratory Judgment

Comes now Plaintiff and complains of each Defendant as follows.

### Parties, Jurisdiction and Venue

1. Plaintiff is Michael Shaffer who resides at 88 Bentz Mill Road, East Berlin, PA 17316.

2. Defendant Susan Graybill is an individual who operated a Minuteman Press franchise in Lemoyne, PA, and may be served in person at 1145 Highland Drive, Mechanicsburg, PA 17055.

3. Defendant Susan Graybill as Administratrix of the Estate of Dennis M. Graybill, deceased, may be served in person at 1145 Highland Drive, Mechanicsburg, PA 17055.

4. Defendant Minuteman Press International, Inc. (hereafter MMPI) is a New York corporation with its home office in Farmingdale, New York. It may be served by certified mail addressed to its registered agent, Peter T. Bauer, General Counsel, Minuteman Press International, Inc., 1640 New Highway, Farmingdale, NY 11735.

5. Defendant Robert Emmett is an individual and representative of MMPI and maintains

an office in Wayne, PA. He may be served in person at 489 Devon Park Drive, Suite 307, Wayne, PA 19087.

6. The court has jurisdiction over these proceedings because the Minuteman Press franchise sold to Plaintiff by Defendants Graybill is located in Cumberland County and the amount in controversy exceeds the minimum jurisdictional amounts of the court.

7. The court has venue over these proceedings because all or part of the cause of action arose in Cumberland County and Defendants Graybill maintained a place of business in Lemoyne, Cumberland County, PA, and reside in Cumberland County, PA.

### Facts Common to All Counts

8. On or about August, 2000, Defendants Graybill were operating a Minuteman Press franchise in Lemoyne under contract with Defendant MMPI. Defendants Graybill were desirous of selling the franchise to Plaintiff and did so on September 6, 2000. Plaintiff entered into various contracts with Defendants Graybill, Defendant MMPI in pursuance of the purchase of the franchise.

### Count I

9. This count sounds in tort.

10. Throughout the relevant time frame alleged in Paragraph 9, all Defendants entered into a conspiracy with one another to unload a failing business on Plaintiff by agreeing to materially defraud Plaintiff by falsely inducing him to enter into a contract to purchase and to purchase the Minuteman Press franchise located in Lemoyne, PA. Defendant Emmett was the regional representative of Defendant MMPI and had authority speak for and to bind the corporation.

11. Defendants Graybill were the owners of the franchise. Defendants Graybill made material misrepresentations as to the financial viability of the franchise and these were made to falsely induce Plaintiff to purchase the Minuteman Press franchise of Lemoyne as an ongoing and viable enterprise with sufficient income to pay expenses and support the store owner and two employees.

12. Defendants Graybill conspired with one another, MMPI and Emmett to represent the Lemoyne franchise as a viable entity that would make a profit and that Plaintiff would start seeing those profits within three months. Defendants Graybill materially misrepresented the financial viability of the Lemoyne franchise. Defendants MMPI and Emmett materially assisted Defendants Graybill to do so. Defendants MMPI and Emmett also made material misrepresentations to induce Plaintiff to purchase the franchise and materially assisted Defendants Graybill in unloading an unprofitable franchise on Plaintiff; these misrepresentations were made by Defendant Emmett, MMPI's regional representative.

13. The following misrepresentations were made by one or more of the Defendants:

a. Defendants Graybill materially misrepresented the financial viability of the Lemoyne franchise by representing that monthly operating expenses were in the range of $7,000.00 when in fact monthly operating expenses were in the range of $12,000.00. Plaintiff expressly obtained copies of the checks written for expenses by the franchise and refused to purchase the franchise because the operating expenses were too high at $12,000.00 per month. Defendant Emmett represented to Plaintiff in response that many of the checks were for personal expenditures and that the operating expenses for the franchise were only $7,000.00 per month. Defendants Graybill confirmed Emmett's misrepresentation. This was a very material factor to Plaintiff because the franchise's monthly income was only in the $5,000.00

range.

b. Defendant Emmett materially misrepresented the financial viability of the Lemoyne franchise by representing that Plaintiff need earn only $2,000.00 per month over and above what the franchise was bringing in in order to make a profit when in fact Plaintiff needed more than $7,000.00 more per month in gross sales just to break even.

c. Defendants MMPI and Emmett materially misrepresented to Plaintiff the financial viability of the Lemoyne franchise by making the same representations as set forth in Paragraphs 13a and 13b. Said Defendants conspired with Defendants Graybill to make these misrepresentations.

d. Defendants MMPI and Emmett materially misrepresented to Plaintiff that he would not only be able to meet expenses within a very short period of time but that he would also realize a gross profit of 30% of gross sales within that same time merely by following MMPI's marketing program, which was to make twenty new contacts per day. Plaintiff did so but was unable to make a profit on the franchise.

e. Defendants MMPI and Emmett materially misrepresented to Plaintiff that the only reason why the Lemoyne franchise was not already making a profit was because Defendant Dennis M. Graybill, now deceased, was not able due to his poor health to make enough marketing calls to generate additional sales.

14. Plaintiff was damaged by these misrepresentations in the loss of the amounts that he paid to Defendants Graybill to purchase the franchise, in the amounts that he paid Defendant MMPI for the transfer of the franchise and to attend its school for new owners, and in the loss of working capital and the amounts that had to be borrowed to operate the franchise from month to month. Consequential damages were suffered by Plaintiff in the amounts that he could not earn

because he was devoting his full time to operation of the franchise instead of his former employment as well as amounts he owes to his landlord and Textron Financial Corporation from contracts that were necessitated by his purchase of the franchise. Further consequential damages stemmed from the inevitable loss of credit reputation when he was unable to repay the money he borrowed to keep the franchise operating from month to month.

### Count II

15. On or about September 1, 2000, Plaintiff entered into a written contract with Defendant MMPI which was labeled as the Franchise Agreement. Immediately upon entering the Agreement, Plaintiff was sent to New York for an explanation of what to do to make the franchise viable. He was promised in writing all needed technical assistance and advice. This assistance and advice was based on the express corporate formula that if the franchisee did what MMPI told him to do, he would meet expenses and make a profit. Plaintiff was expressly told by MMPI that all he would have to do was manage the franchise, make twenty cold calls a day, leave all work to the employees, and, by doing so, he would make significant profits. These promises were made in order to induce Plaintiff to enter into the franchise agreement and were again made in the training school in New York. These promises were made in the Franchise Agreement or were made in supplementation of the written agreement or were made in order to induce Plaintiff to enter into the written agreement. In other words, follow our program and you will realize a pretax profit of one third of your gross sales.

16. These promises were breached by MMPI. At no time was the income from the franchise sufficient to even meet expenses and within six months of purchasing the franchise, Plaintiff was forced to close his doors due to excessive expenses.

18. Damages that flow from these breaches of contract and false promises include the

loss of the money that was paid to MMPI to transfer the franchise to Plaintiff and send him to training school in New York. Consequential damages include the loss of what was paid by Plaintiff to the franchise owners to purchase the franchise, the loss of operating capital, the waste of the assets of Plaintiff's franchise, and the various contractual payments needed to pay the landlord and the equipment lessor. Further direct damages resulted from the extreme mental anguish suffered by Plaintiff which were intentionally inflicted as the result of the torts alleged in this Complaint. These damages are in an amount in excess of the minimum jurisdictional limits of the court.

### Count III

19. Defendant MMPI would not transfer the franchise to Plaintiff without first receiving a financial application from the Plaintiff calling for a disclosure of all assets.. After reviewing Plaintiff's financial statements, MMPI caused the sale of the franchise in Lemoyne to Plaintiff and transferred the franchise to Plaintiff and caused him to expend significant amounts for training and for anticipated losses from operation of the franchise within the first three months.

20. Having required Plaintiff to submit a financial application listing all assets of Plaintiff, Defendant MMPI at all times material to this Complaint, knew or should have known that Plaintiff had insufficient income and assets to operate the franchise for even the three months at the end of which Plaintiff was promised that he would be making profits. As the superior bargaining party, MMPI was under a duty to disclose to Plaintiff that he had insufficient income and assets with which to purchase the Lemoyne franchise. This negligence on the part of MMPI caused Plaintiff to suffer not only monetary damages but also an entitlement to damages for extreme emotional distress in amounts in excess of the minimum jurisdictional limits of the court.

20.1.  Plaintiff has further been consequentially damaged by these defendants in an amount in excess of the minimum jurisdictional amount of the court for extreme mental anguish intentionally inflicted upon him as the result of the loss of his life savings.

### Count IV

22.  Each of the torts complained about were committed with such deliberateness and willfulness and in such reckless disregard of the rights of Plaintiff so as to entitle him to punitive damages in an amount in excess of the minimum jurisdictional amounts of the court.

### Incorporation by Reference

23.  Each Count hereof is incorporated in each other Count by reference.  Each Paragraph hereof is incorporated in each other Paragraph by reference.

Wherefore, Plaintiff prays that after trial hereof, he be awarded actual and consequential and punitive damages, each in an amount in excess of the minimum jurisdictional limits of the court against each defendant and against all defendants jointly and severally for their joint misconduct and for such other and further relief in law and in equity to which Plaintiff may be justly entitled.

Respectfully Submitted,


Robert J. White
Counsel for Plaintiff
PBN 32487
PO Box 3005
York, PA 17402
(717) 699-4534
FAX (717) 699-2895

### Verification

I verify that the facts contained in the Complaint are true and correct to the best of my knowledge, information and belief.  I understand that any false statements are made subject to the penalties of 18 Pa.C.S.A. Sec. 4904  relating to unsworn falsification.

May 1, 2001.

Michael Shaffer