(20)

12-21-01

MA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL A. SHAFFER,** | : | **CIVIL NO. 01-CV-1065** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **SUSAN GRAYBILL AS AN** | : | **FILED** |
| **INDIVIDUAL AND AS** | : | **HARRISBURG, PA** |
| **ADMINISTRATRIX OF THE** | : | |
| **ESTATE OF DENNIS M. GRAYBILL,** | : | DEC 21 2001 |
| **MINUTEMAN PRESS** | : | |
| **INTERNATIONAL, INC. and** | : | MARY E. D'ANDREA, CLERK |
| **ROBERT EMMETT,** | : | Per _____ |
| | : | Deputy Clerk |
| **Defendants** | : | |

## M E M O R A N D U M

Before the court is Defendants Minuteman Press International, Inc.'s
("MMPI") and Robert Emmett's motion to dismiss Plaintiff's complaint pursuant to
Federal Rule of Civil Procedure 12(b)(6).  In the alternative, Defendants move the
court to dismiss Plaintiff's complaint pursuant to Rule 12(b)(3).  Additionally,
before the court is Defendant Susan Graybill's motion to dismiss Plaintiff's
complaint pursuant to Rule 12(b)(6).  The parties have briefed the issues, and the
matters are ripe for disposition.

I.       **Background**

         A.      **Factual Allegations**

         Plaintiff alleges the following facts:  Plaintiff, Michael A. Shaffer,
purchased a Minuteman Press franchise in Lemoyne, Pennsylvania from
Defendants, who include: Susan Graybill, a Pennsylvania resident who owned and

operated the Lemoyne franchise prior to the sale to Plaintiff; Susan Graybill as Administratrix of the Estate of Dennis M. Graybill, who also owned and operated the Lemoyne franchise prior to the sale; MMPI, a New York corporation that entered into the franchise agreement with Plaintiff; and Robert Emmett, an MMPI representative.

In August 2000, the Graybills owned and operated a Minuteman Press franchise in Lemoyne, Pennsylvania under a contract with Defendant MMPI.  The Graybills wanted to sell the franchise.  On September 6, 2000,  Plaintiff entered into a franchise purchase agreement with Defendant MMPI and an asset purchase agreement with Defendants Graybill.  Defendant Emmett represented Defendant MMPI during the negotiations with Plaintiff, and he had the authority to bind the corporation.  Defendant Emmett signed the contracts on behalf of Defendant MMPI.

Plaintiff alleges that Defendants Graybill, MMPI, and Emmett conspired together to fraudulently misrepresent the financial viability of the franchise to induce Plaintiff to enter into the franchise agreement and asset purchase agreement.  Prior to September 1, 2000, Plaintiff inquired about the franchise's monthly operating costs.  In response, Defendants Graybill told Plaintiff  that monthly operating costs were approximately $7,000.  Plaintiff then obtained copies of the franchise's expense checks indicating that the franchise had approximately $12,000 per month in expenses.  Once he discovered this fact, Plaintiff refused to purchase the franchise because the operating expenses were too high.  However, Defendant Emmett told Plaintiff that the numbers did not reflect the true operating costs.  According to Defendant Emmett, the costs were increased due to the fact the

2

Graybills, the franchise owners at that time, drafted many checks for personal expenses on the franchise's account. The Graybills confirmed this assertion.

Defendants Graybill, MMPI, and Emmett represented the Lemoyne franchise as a viable business that would begin to make a profit within three months of the purchase. Additionally, Defendants MMPI and Emmett told Plaintiff that the Lemoyne franchise was not making a profit because Dennis Graybill, now deceased, was unable to make the necessary marketing calls due to his poor health.

Prior to the sale of the Lemoyne franchise, Defendant MMPI required Plaintiff to complete an application for a Minuteman Press franchise. In the application, Plaintiff disclosed all of his financial assets. Plaintiff alleges that the application revealed that he lacked the income and assets necessary to purchase and operate the franchise. Defendant MMPI failed to disclose this fact to Plaintiff.

In September 2000, Plaintiff and MMPI entered into the franchise agreement. During that same month, Plaintiff and Defendants Graybill executed an asset purchase contract. Following formation of the contracts, Plaintiff attended a new owner training program hosted by MMPI in New York. At that program, MMPI told Plaintiff that he need only "manage the franchise, make twenty cold calls a day [and] leave all work to the employees," in order to make a profit. (Complaint at ¶ 15.) MMPI made this statement twice; once prior to the execution of the contract and then at the training school. Plaintiff followed MMPI's advice but was unable to make a profit. Furthermore, contrary to Defendants' claims, the income from the franchise was insufficient to meet the operating expenses. As a result, Plaintiff was forced to close the Lemoyne franchise.

**B.**     **Procedural History**

Plaintiff initiated the instant action by filing a four-count complaint on May 3, 2001 in the Court of Common Pleas of Cumberland County, Pennsylvania. On May 19, 2001, Plaintiff filed an amended complaint containing two additional counts. Defendants removed the case to the United States District Court for the Middle District of Pennsylvania on June 15, 2001. Defendants MMPI and Emmet filed their motion to dismiss on June 22, 2001. Defendant Graybill filed her motion to dismiss on July 16, 2001. Plaintiff filed a motion for leave to file a partial substitute brief in response on August 27, 2001. By an order dated August 31, 2001, the court granted Plaintiff's motion for leave. On November 16, 2001, Plaintiff filed a motion for leave to file a second amended complaint. Additionally, Plaintiff sought leave of court to file a supplemental brief in opposition to Defendants' motions to dismiss. The court subsequently issued an order denying Plaintiff's motions for leave to file those documents.

**II.**     **Legal Standard: Motion to Dismiss**

In deciding a motion to dismiss pursuant to Federal Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn from the face of the complaint. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant[s] on notice of the essential elements of the plaintiff's cause of action." *Nami*, 82 F.3d at 65. The court will not dismiss a complaint for failure to state a claim "unless it appears

beyond a doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

"In determining whether a claim should be dismissed under [Federal] Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, the court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Ben. Guar. Corp. v. White Consol. Ind.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III.    Discussion

Defendants MMPI and Emmett now move to dismiss Plaintiff's claims arguing that: (1) the arbitration clause in the franchise agreement bars this action; (2) venue is improper; (3) Plaintiff has failed to allege a valid cause of action for fraud; (4) Plaintiff has failed to allege a valid cause of action for civil conspiracy; (5) Plaintiff has failed to allege a valid cause of action for negligence; and (6) Plaintiff has failed to allege a valid cause of action for emotional distress. Additionally, Defendants MMPI and Emmett argue that Plaintiff's requests for punitive damages and a jury trial should be stricken.

Defendant Graybill moves to dismiss Plaintiff's claims arguing that: (1) Plaintiff has failed to state a valid claim for fraud; (2) the hold harmless clause in the asset purchase agreement absolves Defendant Graybill of any liability; (3) Plaintiff cannot prove his allegations due to the Dead Man's Act; (4) Plaintiff fails to state a

valid cause of action for civil conspiracy; (5) Plaintiff fails to state a valid cause of action for negligence; and (6) the arbitration clause bars Plaintiff's claim.

Because Defendants raise many common issues in their separate motions, to the extent possible, the court will address those issues collectively.

### A.    **Arbitration**

Defendants argue that Plaintiff's complaint is barred pursuant to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 3. The FAA provides that arbitration agreements in contracts "shall be valid, irrevocable and enforceable." *Id.* Additionally, the FAA establishes a "federal policy favoring arbitration." *Moses H. Crane Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). When parties have previously agreed to arbitrate disputes arising out of a contract, a court may not adjudicate claims of fraud in the inducement of the contract generally. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). If, however, a plaintiff claims fraud in the inducement of the arbitration clause itself, a court may proceed to adjudicate it. *Id.* at 403-404.

In this case, the franchise agreement between MMPI and Plaintiff contains an arbitration clause. The clause states that "[a]ny controversy or claim arising out of or relating to this Agreement or the breach thereof, shall be settled by arbitration." (Defs. Br. in Supp. Mot. Dism., Ex. C, "Franchise Agreement" at ¶ 23.) Defendants assert that Plaintiff has violated the agreement to arbitrate. However, in Count VII, Plaintiff challenges the validity of the arbitration clause. He contends that the clause is a contract of adhesion. (Complaint at ¶ 40.)

An adhesion contract is a "standardized contract form offered to consumers of goods and services on [an] essentially 'take it or leave it' basis

6

without affording [the] consumer a realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiescing [to the] form contract." *Denlinger, Inc. v. Dendler*, 608 A.2d 1061, 1066 (Pa. Super. Ct. 1992). A contract, or a contract term, is unconscionable when the obligor lacks a meaningful choice in accepting the challenged provision, and the challenged provision unreasonably favors the party asserting it. *Witmer v. Exxon Corp.*, 434 A.2d 1222, 1228 (Pa. 1981). The burden of proof rests on the party challenging the contract. *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 264 (Pa. Super. Ct. 1997).

In this case, Plaintiff contends that he had no bargaining power when he executed the franchise agreement. He alleges that MMPI offered the contract on a take it or leave it basis, and Plaintiff was not permitted to have input in the contract provisions. Furthermore, Plaintiff alleges that MMPI designed the arbitration clause "to further its unlawful schemes and activities as set forth in the other Counts of this action." (Complaint at ¶ 40.) Plaintiff's allegations, therefore, amount to a valid cause of action, and the court will not dismiss the complaint on the basis that § 3 of the FAA prohibits the court from hearing the matter.

**B.    Venue**

Defendants MMPI and Emmett move to dismiss Plaintiff's complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). In the alternative, Defendants MMPI and Emmett request that the action be transferred to the Eastern District of New York.

Where jurisdiction is not founded solely on diversity of citizenship, a civil action may be brought in a judicial district in which a substantial part of the

events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). However, venue may be proper in more than one federal district court. *BABN Tech. Corp. v. Bruno*, 25 F.Supp. 2d 593, 597 (E.D. Pa. 1998).

Plaintiff filed the instant action in the Court of Common Pleas of Cumberland County, Pennsylvania. Defendants MMPI and Emmett subsequently removed the case to the District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. §1331 because Plaintiff alleged violations of federal law. (*See* Complaint at ¶ 34 (alleging violation of federal trade commission regulations and federal securities laws).) The instant cause of action arose in Cumberland County, Pennsylvania according to Plaintiff's complaint. The District Court for the Middle District of Pennsylvania, therefore, is a proper venue. Accordingly, the court will deny Defendants' motion to dismiss for improper venue.

Defendants MMPI and Emmett alternatively argue that this action should be transferred to Eastern District of New York. Moving Defendants rely on a forum selection clause included in the franchise agreement. The forum selection clause provides that "any litigation shall be brought in the Supreme Court, of the State of New York in the county where Minuteman has its home office, or in the United States District Court for the Eastern District of New York." (Franchise Agreement at ¶ 23.)

According to 28 U.S.C. § 1404(a): "For the convenience of parties and witnesses, in the interest of justice, a district court *may* transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (emphasis added). When deciding to transfer an action to another venue, courts do not limit their consideration to one single factor. Instead, they consider all

8

relevant factors to determine whether the litigation would proceed more conveniently, and the interests of justice would be better served, by transferring the case to a different forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Among the factors that the court must consider are: (1) plaintiff's choice of forum; (2) defendant's preference; (3) where the claim arose; (4) convenience to the parties; (5) convenience to the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the forums; (6) location of books and records; (7) practical considerations that could make the trial easier, more expeditious, or less expensive; (8) each forum's caseload congestion; and (9) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80.

        A forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum. *Id.* at 880. Although it is not determinative, a forum selection clause is entitled to substantial consideration. *Id.* Thus, deference to a plaintiff's choice of forum is inappropriate where the plaintiff has already contractually chosen an appropriate venue. *Id.* Where the forum selection clause is valid, the plaintiff bears the burden of demonstrating why it should not be bound to the contractual choice of the forum. *Id.*

        Here, Plaintiff's choice of forum is Pennsylvania, while Defendants MMPI and Emmett prefer New York. On the other hand, all or part of the cause of action arose in Cumberland County, Pennsylvania. Moreover, three out of the four defendants are Pennsylvania residents. Because the events leading to the cause of action took place in Pennsylvania, it is likely that most of the witnesses will also be

Pennsylvania residents.  The evidence in this dispute will likely be located in both New York and Pennsylvania.

Plaintiff brought this cause of action against four parties.  However, Defendants Graybill were not parties to the franchise agreement.  Thus, the transaction between Plaintiff and Defendants Graybill was not subject to the forum selection clause agreement contained in the franchise agreement.  If the court were to transfer the action to New York, the action against Defendants Graybill would continue in the Middle District of Pennsylvania.  The same evidence and witnesses will be used in both actions.  To divide the action between the two forums would result in undue expense, delay, and repetitiveness.  The action can be disposed of more expeditiously in the Middle District of Pennsylvania.  Accordingly, the court will deny Defendants MMPI's and Emmett's motion to transfer venue.

C.   **Fraud Claims**

In their motion to dismiss Plaintiff's fraud claims, Defendants assert that Plaintiff failed to allege the particular facts of the fraud with the required level of specificity.  Federal Rule of Civil Procedure 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  *Id*.  This requirement contrasts with the Federal Rule's general requirement of notice pleading.  The Third Circuit has stated:

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.  It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them.

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Defendants contend that Plaintiff's allegations in Counts I and VI do not comply with Rule 9(b). However, Plaintiff alleges specific facts that Defendants misrepresented to him prior to the sale of the Lemoyne franchise. Specifically, Plaintiff states that when questioned about the franchise's monthly expenses, Defendant Emmett responded that "many of the checks were for personal expenditures and that the operating expenses for the franchise were only $7,000.00 per month." (Complaint at ¶ 13a.) Plaintiff avers that the operating expenses were actually $12,000.00 per month.

Plaintiff also avers that Defendants misrepresented the amount of money that Plaintiff would need to earn in sales in order to earn a profit from the franchise. According to Plaintiff, Defendant Emmet told him that Plaintiff would only need to earn $2,000.00 per month over and above what the franchise was bringing in at the time in order to make a profit. Plaintiff, however, contends that he needed more than $7,000.00 more per month in gross sales just to break even. Plaintiff also avers that Defendants MMPI and Emmett falsely told him that he would realize a profit of 30% of gross sales within a very short period of time if he followed MMPI's marketing program.

Additionally, Plaintiff alleges that Defendants MMPI and Emmett told Plaintiff that Dennis Graybill's poor health was the sole cause of the franchise's shortfall because his condition prevented him from making the necessary marketing calls. Furthermore, in Count VI, Plaintiff avers that "Emmett falsely told Plaintiff that the Graybill expenses to operate the franchise were about $7,000 per month." (Complaint at ¶ 37c.) The court finds that these allegations are sufficiently

11

particular to "place the defendants on notice of the precise misconduct with which they are charged." *Seville Indus. Mach. Corp.*, 742 F.2d at 791. Accordingly, Defendants' motion to dismiss Plaintiff's fraud and fraudulent misrepresentation claims in Counts I and VI will be denied.

### D.   Civil Conspiracy Claim

Defendants assert that Plaintiff has failed to plead a valid claim for civil conspiracy. To establish a civil conspiracy under Pennsylvania law, a plaintiff must prove the following elements: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *SNA, Inc. v. Array*, 51 F. Supp. 2d 554, 560-61 (E.D. Pa. 1999) (citing *Strickland v. University of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)). Proof of malice or an intent to injure is essential to a conspiracy cause of action. *See Strickland*, 700 A.2d at 988; *Rutherfoord v. Presbyterian-Univ. Hosp.*, 612 A.2d 500, 508 (Pa. Super. Ct. 1992).

Defendants contend that Plaintiff's complaint fails to allege a particular act that Defendants conspired to commit. However, as previously discussed, Plaintiff has adequately plead claims for an underlying act to the conspiracy, namely, fraud in the inducement and fraudulent misrepresentation. *See infra.*, Part III.C.

In the alternative, Defendants contend that Plaintiff fails to allege malice on the part of either MMPI or Emmett. However, in Count IV, Plaintiff alleges that Defendants acted with deliberateness and a willful disregard of his rights. (Complaint at ¶ 22.) Malice or intent to injure can be inferred from these

allegations. Plaintiff, therefore, has satisfied this pleading requirement. Accordingly, the court will deny Defendants' motion to dismiss Plaintiff's claim of civil conspiracy.

### E.   Negligence Claim

In their motions to dismiss, Defendants assert that Plaintiff has failed to adequately plead a claim for negligence. To properly plead a claim of negligence, a plaintiff must allege the following elements in his complaint:

> (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure on the person's part to conform to the standard required; (3) a breach of the duty; (4) a reasonably close causal connection between the conduct and the resulting injury; (5) actual loss or damage resulting to the interest of another.

*Reformed Church of Ascension v. Theodore Hooven & Sons, Inc.* 764 A.2d 1106, 1109-1110 (Pa. Super. Ct. 2000).

In Count III, Plaintiff alleges "[a]s the superior bargaining party, MMPI was under a duty to disclose to Plaintiff that he had insufficient income and assets with which to purchase the Lemoyne franchise." (Complaint at ¶ 20.) Plaintiff cites no authority imposing a duty upon Defendants to disclose such facts. Therefore, the court will dismiss Plaintiff's claim for negligence.

### F.   Emotional Distress Claim

Defendants move for dismissal of Plaintiff's claim for intentional infliction of emotional distress in Count III because Plaintiff has failed to allege physical injury or acts of outrageous conduct committed by either Emmett or MMPI. The general rule under Pennsylvania law is that a claimant may not recover damages for intentional infliction of emotional distress in the absence of a physical

13

manifestation of the emotional distress allegedly suffered.  *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 991-92 (Pa. 1987).

Plaintiff alleges that he suffered emotional distress as a result of Defendants' fraud and misrepresentations.  Plaintiff does not allege that he suffered any physical manifestation of injury as a result of Defendants' conduct.  Therefore, the court will dismiss Plaintiff's claim for intentional infliction of emotional distress.

### G.    Hold Harmless Clause

Defendants Graybill argue that Plaintiff's action against them should be dismissed because Plaintiff agreed, in the asset purchase agreement, to hold them harmless for any claims arising out of Plaintiff's running of the franchise.  However, Plaintiff does not allege that his claim against Defendants Graybill arose out of his business activities.  Instead, Plaintiff alleges that the claim is based on the Graybills' assertions to him concerning the franchise's operating costs.  Those events took place before contract formation, relate to the franchise's expenses while the Graybills owned it, and have nothing to do with Plaintiff's subsequent running of the business.  Therefore, the hold harmless clause does not absolve Defendants Graybill of their potential liability to Plaintiff.

### H.    Punitive Damages

Under Pennsylvania law, punitive damages are not an independent cause of action and are only awarded to deter outrageous or malicious conduct.  *Garden State Tire Realty Corp. v. R.K.R. Hess Assocs., Inc.*, 762 F. Supp. 92, 93 (M.D. Pa. 1990).  Contrary to Defendants' assertion, however, Plaintiff does not state an independent cause of action for punitive damages.  Rather, Plaintiff requests

14

punitive damages as a remedy for his claims.  Although placed under the heading of
"Count IV," the plain language indicates that Plaintiff seeks punitive damages as a
remedy for the other Counts.  Because Plaintiff states certain causes of actions for
which punitive damages are an appropriate remedy, in addition to the fact that
Plaintiff alleges that Defendants acted with willful disregard of Plaintiff's rights, the
court will not strike Plaintiff's claim for punitive damages.

## I.   Jury Trial Demand

Defendants move to strike Plaintiff's jury trial demand because
Plaintiff contractually waived any right to a jury trial.  The franchise agreement
states that "[t]he parties waive their rights to trial by jury except where prohibited by
Federal or State law."  (Franchise Agreement at ¶ 23.)

The Seventh Amendment guarantees a right to a jury trial.  U.S. Const.
amend. VII.  That right, however, may be surrendered through a knowing and
voluntary waiver.  *United States v. Moore*, 340 U.S. 616, 621 (1951); *First Union
Nat'l Bank v. United States*, 164 F. Supp. 2d 660 (E.D. Pa. 2001).  A waiver is
knowing, voluntary and intelligent when the facts show that: (1) there was no gross
disparity in bargaining power between the parties; (2) the parties are sophisticated
business entities; (3) the parties had an opportunity to negotiate the contract terms;
and (4) the waiver provision was conspicuous.  *First Union Nat'l Bank*, 164 F.
Supp. 2d at 660.   The party seeking to enforce the waiver bears the burden of proof.
*Id.*

Accordingly, Defendants MMPI and Emmett have the burden of
showing that Plaintiff's waiver was knowing and voluntary.  In support of their
contention that Plaintiff waived his right to a jury trial, Defendants simply assert

15

that Plaintiff contractually waived.  At this stage in the litigation, however, this assertion alone is insufficient to carry Defendants' burden.  Given the size of MMPI and the allegations of a boilerplate contract, it is possible that some disparity in bargaining power existed.  For the same reasons, it is possible that Plaintiff lacked the opportunity to negotiate the terms and conditions of the franchise agreement.

Furthermore, the clause containing the jury trial waiver is not conspicuous.  The waiver appears in § 23 of the franchise agreement.  Although this section of the agreement is entitled "Arbitration and Litigation," the jury trial waiver appears in the final sentence of the fourth paragraph of the subsection.  Additionally, the jury trial clause does not appear in a larger font than the surrounding text.  The court, therefore, cannot find that the waiver was conspicuous.  Defendants have failed to carry their burden demonstrating that Plaintiff knowingly and voluntarily waived his right to a jury trial.  Therefore, the court will deny Defendants' motion to strike Plaintiff's jury trial demand.

### J.    Dead Man's Act

Defendant Susan Graybill also moves to dismiss the instant action on the grounds that Plaintiff cannot prove facts that would entitle him to a judgment against her.  Defendant Graybill contends that because Plaintiff's claim relies on alleged misrepresentations made by Dennis Graybill, now deceased, the admission of such statements in barred by virtue of the Dead Man's Act.  *See* 42 Pa. Cons. Stat. Ann. § 5930 (West 1999).

However, contrary to Defendant Graybill's contention, Plaintiff alleges that Defendant Susan Graybill participated in the misrepresentations.  Additionally, Plaintiff named Susan Graybill as a Defendant in both her individual capacity and as

16

administrator of her late husband's estate.  Therefore, the court need not decide at this juncture if statements made by Dennis Graybill are inadmissible.  Even without such statements, Plaintiff has alleged facts that would entitle him to recovery against Susan Graybill in her individual capacity.  As for the claim against her as administrator of Dennis Graybill's estate, Plaintiff argues that Susan Graybill witnessed Dennis Graybill's assertions.  Therefore, Susan Graybill is a competent witness of such statements because her interests were not adverse to the deceased. *See id.*  The court agrees and will not dismiss Plaintiff's claims based on the Dead Man's statute.

## IV.    Conclusion

In accordance with the foregoing discussion, the court will deny: (1) Defendants' motions to dismiss Plaintiff's complaint for failure to state a claim for fraud and fraudulent misrepresentation; (2) Defendants' motions to stay the action pending arbitration; (3) Defendants' motion to transfer the action to the Eastern District of New York; (4) Defendants' motion to strike Plaintiff's request for punitive damages; and (5) Defendants' motions to strike the jury trial demand.  The court will grant Defendants' motions to dismiss the negligence and intentional infliction of emotional distress claims.  An appropriate order will issue.

SYLVIA H. RAMBO
United States District Judge

Dated:  December *21* , 2001.

17

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *

Re:  1:01-cv-01065   Shaffer v. Graybill

True and correct copies of the attached were mailed by the clerk
to the following:

    Robert J. White, Esq.
    P.O. Box 3005
    York, PA  17402 Fax No.: (717) 699-2895

    Marvin Beshore, Esq.
    Milspaw & Beshore
    130 State Street
    Harrisburg, PA  17108-0946      Fax No.: (717) 236-0791

    Charles P. Brown, Esq.
    Nicholas & Foreman, P.C.
    4409 North Front Street
    Harrisburg, PA  17110

    Harris J. Chernow, Esq.
    Arthur L. Pressman, Esq.
    John J. Jacko III, Esq.
    Pearlette V. Toussant, Esq.
    Buchanan Ingersoll Professional Corporation
    Eleven Penn Center, 14th Floor
    1835 Market St.
    Philadelphia, PA  19103-2895

cc:
Judge                        (X )        (  ) Pro Se Law Clerk
Magistrate Judge             (  )        (  ) INS
Ct Reporter                  (  )
Ctroom Deputy                (  )
Orig-Security                (  )
Other_____       (  )

                                         MARY E. D'ANDREA, Clerk

    DATE: December 21st, 2001            BY: _____
                                             Deputy Clerk