**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL A. SHAFFER, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 01-CV-1065 |
| | : Judge Sylvia H. Rambo |
| SUSAN GRAYBILL AS AN INDIVIDUAL AND AS ADMINISTRATRIX OF THE ESTATE OF DENNIS M. GRAYBILL, MINUTEMAN PRESS INTERNATIONAL, INC., and ROBERT EMMETT, | : **FILED** HARRISBURG JAN 0 8 2002 MARY E. D'ANDREA, CLERK Per_____ DEPUTY CLERK |
| Defendants. | : |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
FOR RECONSIDERATION OF THE COURT'S DECEMBER
21, 2001 ORDER AND MEMORANDUM OF DEFENDANTS
MINUTEMAN PRESS INTERNATIONAL, INC. AND
ROBERT EMMETT**

Defendants Minuteman Press International, Inc. ("Minuteman") and Robert

Emmett (collectively, "Moving Defendants") hereby move, pursuant to LR 7.10 of

the United District Court for the Middle District of Pennsylvania, for

reconsideration of that portion of the Court's December 21, 2001 Order and Memorandum by which the Court refused to enforce an arbitration clause contained in the franchise agreement between Minuteman and Plaintiff.[1]

## I. THE COURT SHOULD RECONSIDER ITS REFUSAL TO ENFORCE THE CONTRACTUAL ARBITRATION PROVISION BETWEEN THE PARTIES

Plaintiff's sole objection to enforcement of the arbitration clause contained in his franchise agreement is his allegation that the franchise agreement was presented to him on a "take it or leave it" basis (First Amended Complaint at ¶ 40). His precise claim, fleshed out in his opposition to Moving Defendants' Motion to Dismiss is that the cost of arbitration, which he described as "expensive," would make it "impossible" for him to obtain a remedy. Plaintiff's Opp. Memo at 5, ¶ 8. From all of this, the Court has concluded that Plaintiff has alleged that the arbitration clause is a contract of adhesion. Court's Memorandum at 6.

Irrespective of whether Plaintiff has adequately pleaded that the arbitration clause, as opposed to his franchise contract (or its individual clauses), it does not fall within the Court's definition of an adhesion contract.

The Court defined an adhesion contract as a "standardized contract form offered to consumers of goods and services on [an] essentially "take it or leave it" basis without affording [the] consumer a realistic opportunity to bargain and under

---

[1] Moving Defendants hereby incorporate by reference their Motion for Reconsideration

such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiring [to the] form contract. *Denlengh, Inc. v. Dendler*, 608 A2d 1061, 1066 (Pa. Super. Ct. 1992).

Pennsylvania case law has long held the purchase of a business franchise is not a consumer purchase. *Coxfam, Inc. v. AAMCO Transmissions, Inc.*, 1989 WL 51771, *3 (E.D. Pa. 1989) (denying franchisees' motion for leave to file amended complaint to include claim under Pennsylvania Unfair Trade Practice and Consumer Protection Law ("CPL"), 73 P.S. §201-1, *et seq.*, stating that "the CPL is available only to consumers who have purchased goods or services for personal, family, or household purposes").[2] *See also Lorenzo v. Electronic Realty Associates, L.P.*, Bus. Franchise Guide, ¶10,886 (M.D. Pa. 1996) (Durkin, Magis. J.) (dismissed franchisee claim under Pennsylvania CPL against franchisor as relating to business purposes only after review of complaint and membership agreement). The transaction at issue here is a purely elective transaction between

---

pursuant to Fed.R.Civ.P. 10(c).

[2]    In *J&R Ice Cream v. California Smoothe Licensing*, 31 F. 3d 1259 (3d Cir. 1994) (holding that commercial franchises not covered by the New Jersey Consumer Fraud Act), the Third Circuit stated:

> We conclude that even where franchises or distributorships are available to the public as large in the same sense as are trucks, boats or computer peripherals, they are not covered by the Consumer Fraud Act because they are businesses, not consumer goods or services. They never are purchased for consumption.

*J&R Ice Cream*, 31 F.3d at 1274.

two business persons.[3] There is no compulsion for a prospective franchisee to purchase a specific franchise - he can literally "take it" or "leave it", and purchase another franchise, another business, or take or continue employment with another. The purchaser can bargain, by abandoning or threatening to abandon the transaction. Indeed, as noted by Judges Pollack and Joyner, franchise agreements cannot generally be said to be adhesion contracts -- "franchise agreements are less "necessitous" than loan contracts, insurance contracts and leases; a prospective franchisee has other options", *AAMCO Transmission, Inc. v. Harris*, 1990 WL 83336, ¶ 5 (Pollack, J.) (E.D. Pa. 1990), and *Cottman Transmission Systems, Inc. v. Melody*, 1994 W.L. 702913, ¶ 2 (Joyner, J.) (E.D. Pa. 1994).

Irrespective of whether a business person has "bargaining power" in a business transaction does not mean that any resulting contract is an adhesion contract. Even a "take it or leave it" contract is not an adhesion contract unless it, or the clauses at issue, gives all the benefits to the party and all the burdens to the other. *Brown v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 664 F. Supp. 969, 974 (E.D. Pa. 1987). As there is mutuality of obligation under the arbitration clause, and numerous other benefits and burdens flowing between the parties under

---

[3] Plaintiff's description of himself as an "unsophisticated businessman" ignores his employment and professional history as a security officer for our country's nuclear missile program, a skip tracer, a licensed insurance salesman, a business manger for automobile companies "in the area[s] of customer financing and providing insurance, a bill collector for a lawyer, and president of a collection agency that he founded. Plaintiff's Opp. Memo at Exhibit "D".

-4-

the franchise agreement (compare, for example, franchisor's burden of allowing franchisee to use trademarks and business system with the franchisee's benefit of their use), it can hardly be said that either the arbitration clause or the contract containing it are adhesion contracts, or that "the challenged provision unreasonably favors the party asserting it" (Court's Memorandum at 7).

The Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq.*, and the cases that construe it, mandate that all doubts as to enforcement of arbitration clauses be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983).

Refusal to enforce the parties' arbitration clause, in the absence of any meaningful claim that the clause itself was procured by fraud, runs counter to the clear mandate of *Moses Cone* and *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967).

## II. CONCLUSION

For the foregoing reasons, defendants Minuteman Press International, Inc. and Robert Emmett, respectfully request that this Court reconsider that portion of

its Order dated December 21, 2001 denying Moving Defendants' Motion to Dismiss in the form of Order attached.

                    Respectfully submitted,

                    _____
                    Harris J. Chernow
                    John J. Jacko III
                    Pearlette V. Toussant
                    P.A. I.D. Nos. 52577/67477/85756
                    **BUCHANAN INGERSOLL**
                    **PROFESSIONAL CORPORATION**
                    Eleven Penn Center, 14th Floor
                    1835 Market Street
                    Philadelphia, PA 19103
                    (215) 665-3854

                    Attorneys for Defendants,
                    Minuteman Press International, Inc. and
                    Robert Emmett

Dated: January 7, 2002