Robert J. White
Attorney and Counselor at Law
PBN 32487
PO Box 3005
York, PA 17402
(717) 854-5627

In the United States District Court for the Middle District of Pennsylvania

| | | |
|---|---|---|
| Michael A. Shaffer, | } No. 01-CV-1065 | |
| Plaintiff, | } | |
| | } Judge Rambo | |
| v. | } | |
| | } | |
| Susan Graybill, et al., | } | |
| Defendants. | } | |

FILED
HARRISBURG

JAN 18 200?

MARY E. D'ANDREA
Per _____ Deputy Clerk

### Plaintiff's Brief In Response

### To Defendants MMPI and Emmett's Motion for Reconsideration

### With Plaintiff's Motion to Strike

### and

### Plaintiff's Motion for Reconsideration

Comes now Plaintiff and replies to Defendant MMPI and Emmett's Motion for Reconsideration of that portion of the December 21, 2000, Court Order refusing enforcement of the arbitration clause. Plaintiff moves to strike the Motion and files his own motion for reconsideration.

### Procedural Matters

1. Local Rule 7.10 requires motions for reconsideration to be filed within ten days of the order sought to be reconsidered. Defendants have failed to comply with the deadline, mailing their Motion on January 7, 2002, some sixteen days after entry of the Court Order. Even

granting the Defendants an additional three days since the Court Order was mailed on December 21, 2001, Defendants have still failed to comply with the time limit set by L.R. 7.10. Plaintiff therefore moves to strike Defendants' Motion.

2. In addition, both Defendants MMPI and Emmett commenced discovery on January 3, 2002, by mailing Interrogatories and Document Requests to Plaintiff's counsel, and have thereby waived any right to file a motion for reconsideration. See Exh. A. the cover sheet and the date of the discovery requests.

3. In addition, Defendant Emmett was not a party to the Franchise Agreement and has no standing to raise the arbitration issue. The arbitration clause in the Franchise expressly limits arbitration to franchisor and franchisee only and prohibits any other persons from being parties to any allegedly required arbitration. The clause in the Franchise Agreement reads:

> The Franchisee acknowledges and agrees that it is the intent of the parties that arbitration between Minuteman and the Franchisee shall be of Minuteman's and the Franchisee's individual claims only. No consolidated or multiple party claims may be brought by either Minuteman or the Franchisee.

Wherefore, Plaintiff moves to strike Defendants Motion for Reconsideration and for such other and further relief which is just and equitable under the circumstances of this case.

### Reply to the Merits

4. Plaintiff submits that the Motion for reconsideration is much ado about nothing. The FTC Act defines a franchisee as a consumer. Art. 2-302 of the UCC makes express provisions regarding litigation over unconscionable contracts and clauses between businessmen. There is no Pennsylvania or New York case law that indicates that businessmen cannot be the subject of adhesion contracts and unconscionable contracts and clauses. Commercial contracts can be

unenforceable in whole or in part for unconscionableness. Finally, Plaintiff was an unsophisticated business man and even those cases denying attacks on contracts as adhesion contracts or for unconscionableness require that the contracts be between sophisticated businessmen. These themes will be more fully developed in this Brief.

5. Defendants' statement that franchisees are not consumers within the meaning of the PA consumer statutes begs the question of whether commercial contracts can be adhesion contracts and unconscionable. Plaintiff did not file a cause of action under the PA consumer statute which allow for actions to protect consumers in transactions involving personal, family or household use. It is admitted that Plaintiff has no cause of action under Pennsylvania consumer statutes. These statutes do not, however, prevent business consumers from being protected from the fraud of franchisors.

6. There is a long line of cases under the FTC Act, that franchisees are consumers who are to be protected from unfair and deceptive trade practices that affect interstate commerce. FTC v. Minuteman Press, Inc., 53 F.Supp.2d 248 (E.D.N.Y. 1998) - franchisees of Minuteman Press are consumers. See also FTC v. Amy Travel Services, Inc., 875 F.2d 564 (7th Cir. 1989) and FTC v. Pantron I Corp., 33 F.3rd 1088 (9th Cir. 1994). In fact, every case that has dealt with the issue has found any person aggrieved by fraudulent and deceptive trade practices affecting interstate commerce to be consumers within the meaning of the Act.

7. There is simply no Pennsylvania case law that business consumers cannot be the victims of adhesion contracts. To the contrary, both the PA and NY UCCs contain express provision regarding adhesion contracts and unconscionableness within the context of commercial transactions.

a. Sec. 1-203 requires commercial contracts to be performed in good faith. 13 Pa.C.S.A.1203; <u>Skeels v. Universal CIT Credit Corp.</u>, 335 F.2d 846 (3d Cir. 1964).

b. This clause has been interpreted to mean that every commercial contract requires honesty in fact in the conduct of the transaction in question. <u>Chrysler Credit Corp. v. B.J.M., Jr., Inc.</u>, 834 F.Supp. 813 (E.D.Pa. 1993). Plaintiff has set forth the myriad ways in which Defendants have not been honest in fact in his Complaint as amended, proposed Second Amended Complaint, Brief in Opposition to Motion to Dismiss, and the Affidavit attached thereto, which are incorporated herein by reference.

c. Whether a defendant's conduct amounts to bad faith is a question for the jury. <u>Lichtenstein v. Kidder, Peabody & Co., Inc.</u>, 777 F.Supp. 423 (W.D.Pa. 1991).

8. Similarly, Art. 2-302 of the PA and NY UCCs contain express provision dealing with unconscionable contracts or clauses. Art 2-302 allows the court to refuse to enforce the contract, enforce the remainder of the contract without the unconscionable clauses, or limit the application of the clause to avoid an unconscionable result. A reasonable opportunity to present evidence is required. This clause has been interpreted to mean:

a. If one of the parties had no meaningful choice with respect to the provision and the provision unreasonably favors the other party, the provision is unenforceable. The provision must be analyzed in light of the general commercial background and needs of the trade to determine whether the provision is one-sided and is unconscionable under the circumstances. <u>Borden, Inc. v. Advent Ink Co.</u>, 701 A.2d 255 (Pa.Super. 1999), appeal denied 725 A.2d 178. It cannot be said in this case that the Defendants need an arbitration clause when they themselves enticed Plaintiff to part with nearly all his money in the purchase and operation of a franchise

that was losing money, so as to deny him any means with which to enforce the arbitration clause.

b. A clause is unconscionable in the absence of meaningful choice on the part of one party with the terms unreasonably favorable to the other. <u>Metalized Ceramics for Electronics, Inc. v. National Ammonia Co.</u>, 633 A.2d 762 (Pa.Super. 1995). In the case before the court, the Plaintiff was not allowed to negotiate the contract which was published in Minuteman's Disclosure Statement required by the FTC and the New York Franchise Act in the exact form in which it had to be signed. This amounts to absence of meaningful choice to a Plaintiff who saw an investment ad in a newspaper, inquired about it, and was enamored of Defendants' claims to control his own destiny and to make a lot of money from operating one of MMPI's franchises. The arbitration clause in this context, where a Plaintiff was falsely induced into entering a contract, must only be read in the light of those false inducements and the understanding that those false inducements would entice him to sign his very life away.

c. The arbitration clause is not required for MMPI to protect its rights under the Franchise Agreement. Based upon information and belief, it was designed to circumvent the relief sought by the FTC in the case of <u>FTC v. Minuteman Press International, Inc.</u>, 53 F.Supp.2d 248 (E.D.N.Y. 1998). That case resulted in an injunction designed to protect small franchisees, such as Plaintiff, from the very acts that were perpetrated on him by the Defendants and resulted in a $3 million restitution order. A small franchise purchaser such as Plaintiff would simply be deprived of a remedy if forced to go to arbitration in New York. In contacting the Center for Dispute Resolution, named as arbitrator by MMPI, counsel learned that the minimum arbitration fee that Plaintiff had to pay was $250.00 per hour. Small franchise purchasers, such as Plaintiff, who have spent nearly all their money in an effort to purchase a franchise and get it going simply

do not have any money left to afford fees like these for a lengthy arbitration.

    d. Commercial contracts can be unenforceable in whole or in part for unconscionableness. <u>Stanley A. Kopp, Inc. v. John Deere, Inc.</u>, 510 F.Supp. 807 (E.D.Pa. 1981), aff'd 676 F.2d 688. That this contract is unenforceable in whole or in part has been amply demonstrated in Plaintiff's prior submissions to the court, which are incorporated herein by reference.

    9. The situation that Plaintiff faced in this case is very similar to the one that the tenant faced in <u>Denlengh, Inc. v. Dendler</u>, 608 A.2d 1061 (Pa.Super. 1992). A plaintiff who needed to make a living was induced to enter a fraudulent franchise agreement in a situation in which the monolithic entities of the franchisors reviewed each other's contracts and included many non-negotiable boilerplate provisions to the detriment of potential franchisees. Plaintiff was faced with the same coercive atmosphere in lack of alternatives as the tenant. This atmosphere was brought on by the false promises made to induce him to attempt to make his living ( a need as great as that of obtaining a rental apartment) by operating one of MMPI's franchises. Who wouldn't jump at a chance to make profits within three months of acquiring a business?

    a. The actual holding in <u>Denlengh</u> is not that adhesion contracts are limited to consumer transactions within the meaning of the PA consumer statutes or only that consumer tenants can be protected from adhesion contracts. The distinctive feature of an adhesion contract was said to be when the weaker party has no realistic choice as to its terms. "Whether a contract is, in fact, an adhesion contract must be determined on an individual basis, in light of the particular circumstances and parties involved." At 1067. In addition, the case indicated that the decision might have been altered had Dendler alleged fraud in his contract with the bank, which Plaintiff

has done in relation to the Franchise Agreement.

    b. In addition, <u>Denlengh</u> required an experienced businessman equipped to understand the meaning of the terms of the agreement he signed. None of Plaintiff's very limited business experience as set forth in his Affidavit attached to his Reply Brief qualified him as a sophisticated businessman. He was an innocent purchaser who was enamored of Defendants' claims to control his own destiny and make a lot of money in the printing business by purchasing a luscious franchise that would turn a profit in three months.

    c. Finally, there is no magic in the use of the term "consumer" in the definition of adhesion contracts. The definition was taken from Black's Law Dictionary and goes on to speak of "persons" in the remainder of the quotation.

    10. To enforce the arbitration clause in this case would simply mean that Plaintiff cannot seek redress for the damage done to him by the fraud of the Defendants MMPI and Emmett who acted in concert with the Graybills. Plaintiff does not have the money, which was eaten up in his attempt to get his printing franchise up and running on the express misrepresentation that he could turn the business around in three months on the $20,000.00 he had available to him, to pursue arbitration. Defendants knew that when they had him sign the contract and invest nearly all his money in the business and that is one of the reasons why the contract, and the arbitration clause in it, were procured by fraud.

    Wherefore, Plaintiff moves the court to deny Defendants' Motion for Reconsideration and allow this case to proceed to trial and for such other and further relief, at law or in equity, to which he may justly be entitled.

Comes now Plaintiff and moves the court to reconsider its ruling dismissing the negligence claims of the Plaintiff.

11. If Defendants are permitted to late file a Motion for Reconsideration, so too is Plaintiff.

12. For the reasons set forth in this Brief and especially Para. 7, Plaintiff has adequately pled a cause of action for negligence or bad faith.

13. The court dismissed the negligence count on the sole ground that Plaintiff hadn't cited any case law to support his claim. The statutory and case law has now been cited.

Wherefore, Plaintiff moves that the court reconsider its order dismissing the negligence claim and hold that Plaintiff has stated a cause of action for negligence or bad faith and for such other and further relief, at law or in equity, to which he is justly entitled.

Respectfully Submitted,

*Robert White*

Robert J. White
Counsel for Plaintiff

Dated: January 17, 2002

### Certificate of Service

The undersigned certifies that he has served a copy of this Omnibus Motion by first class mail, poastage prepaid on this 17th day of January, 2002, on Counsel for the Minuteman Defendants, Harris J. Chernow, at Buchanan Ingersoll, Eleven Penn Center,
1835 Market Street, Philadelphia, PA 19103 and Counsel for the Graybill Defendants, Charles Reese Brown at Nicholas & Foreman, 4409 N. Front Street, Harrisburg, PA 17110.

*Robert White*
Robert J. White