Robert J. White
PBN 32487
PO Box 3005
York, PA 17402
(717) 854-5627
Counsel for Plaintiff

In the United States District Court for the Middle District of Pennsylvania

| | |
|---|---|
| Michael A. Shaffer,<br>　　　Plaintiff,<br><br>　　v.<br><br>Susan Graybill, et al.,<br>　　　Defendants. | } No. 01-CV-1065<br>}<br>} Judge Rambo<br>}<br>}<br>}<br>} |

FILED
HARRISBURG, PA

FEB 0 4 2002

MARY E. D'ANDREA, CLERK
Per _____
　　　Deputy Clerk

## Plaintiff's Response and Brief In Opposition To

## Defendants MMPI and Emmett's Motion to Stay The Proceeding

Comes now Plaintiff and files his Response to Defendants MMPI and Emmett's Motion to Stay the Proceeding Pending Their Motion for Reconsideration and Appeal.

### Response

1. Defendant Emmett's Motion and Appeal is frivolous. The Franchise Agreement excludes him from arbitration and he has no standing to bring the Motion or Appeal.

2. Defendant MMPI's Motion and Appeal are frivolous and the stay should not be granted due to the embedded claims of fraud against it and Emmett contained in the Complaint.

3. The Graybill Defendants' Contract contains no arbitration clause and this case should proceed against the Graybills and Emmett, even if MMPI is granted a stay. The claims against these three Defendants do not depend on the liability of MMPI.

### Brief

Page 1

4. There are numerous reasons why the Defendants' Motion to Stay should not be granted.

5. First, there is a split of authority among the circuit courts as to whether an action should be stayed pending a 9 U.S.C. Sec. 16(a) appeal.

6. The 2nd and 9th Circuits have weighed in against staying actions similar to Plaintiff's merely on the grounds that a defendant appealed a refusal to enforce an arbitration clause by the District Court. Cook v. Erbey, 207 F.3rd 1104 (9th Cir. 2000); In re Salomon Inc. Shareholders Derivative Action, 68 F.3rd 554 (2d Cir. 1995); Britton vo Co-Op Banking Group, 916 F.2d 1405 (9th Cir. 1990). These cases state that an appeal concerning arbitration does not affect proceedings to resolve the merits of the case and that an automatic stay would give a crafty litigant too much ability to disrupt the district judge's schedule by filing frivolous appeals.

7. Second, Defendant Emmett's liability does not depend on the liability of MMPI. He is responsible for his own acts of fraud, which were pled separately against him in the Complaint, as an individual regardless of whether MMPI is also liable for those acts. In addition, the arbitration clause in the Franchise Agreement specifically excludes any party besides the franchisee and the franchisor from being joined in any allegedly required arbitration:

> The Franchisee acknowledges and agrees that it is the intent of the parties
> that arbitration be between Minuteman and the Franchisee's individual
> claims only.

Franchise Agreement at Para. 23. Hence, proceedings against Emmett should not be stayed.

8. Third, the liability of the Graybill Defendants does not rest on the liability of MMPI. They are responsible for their own acts of fraud, which were pled separately against

Page 2

them in the Complaint, regardless of whether MMPI or Emmett are liable for different acts of fraud, which were pled separately against them in the Complaint. In addition, their contracts do not contain an arbitration clause. Hence, proceedings against the Graybill Defendants should not be stayed.

9. The cases cited by Defendants in support of a stay for Emmett and the Graybills are easily distinguishable from the instant case. Each of the cited cases turned on the issue that the liability of the appealing Defendant had to be established before the actions could result in a determination of damages against the non-appealing parties. Here, the liability of the non-appealing Defendants can be established solely on their own acts of fraud. This is a huge difference between Defendants' cited cases and this case.

10. Even more, the cases cited by Defendants do not apply in the context of this case. There is no issue against Emmett or the Graybills that will be decided in arbitration in this case. The arbitration clause is not binding - only the "losing" party can enter judgment on the arbitration award without a mechanism to determine who the losing party is:

> Any arbitration shall be non-binding, but if the losing party consents (such consent shall be in writing) a judgment upon the arbitration award may be entered in any court having competent jurisdiction and then become final and binding,

Franchise Agreement at Para. 33. Thus, the entire arbitration clause is ephemeral and illusory. In addition, Defendant MMPI has already unilaterally altered the arbitration rules by providing in the clause that each party bear its own costs without reference to the arbitration rule that the economic position and conduct of both parties would be used to apportion attorney fees in arbitration. Floss v. Ryan's Family Steak Houses, Inc., 211 F.3rd 306 (6th Cir. 2000) - where a party can unilaterally alter the rules of

Page 3

arbitration, the contract is illusory and unenforceable.

11. Fourth, this leaves only the issue of whether the proceedings against MMPI should be stayed pending its appeal. However, it should be noted that the court's refusal to allow arbitration is in a preliminary context - i.e., it was made in response to a Motion to Dismiss or Stay before any evidentiary hearing. A preliminary determination that an action will not be stayed pending arbitration does not dispense with the requirement that a record to support a final determination be developed. There is simply no record in this case to be appealed and MMPI's filing of the appeal is therefore frivolous. See Paine Webber, Inc. v. Hartman, 921 F.2d 507 (3rd Cir. 1990).

12. Defendants rely heavily on Bradford-Scott Data Corp. v. Physician Computer Network, Inc., 128 F.3rd 504 (7th Cir. 1997) for the proposition that a 9 U.S.C. 16(a) appeal stays the district court proceedings as to all defendants. In order to maintain this position, Defendants have simply ignored the outcome of the case, in which the appellate court quite clearly recognized, and therefore sent the case back to the district court for a determination by the district court, that it is for the district court to decide whether or not the stay should be applied to non-appealing defendants:

> The district judge should decide whether discovery among Bradford-Scott and the Defendants who have not appealed sensibly can proceed without PCN and VERSYSS.

At 507. Thus, even the Defendants' case in chief recognizes that it is up to the District Court to decide under all of the circumstances of the case whether action against non-appealing Defendants should be stayed..

13. Fifth, for other reasons, too, MMPI's motion to stay and appeal of this case are

Page 4

frivolous. The appeal will resolve nothing. Even if this case is sent to arbitration by the 3rd Circuit, the arbitration will solve nothing. The Franchise Agreement contains no provision for all the parties to enter judgment on an arbitration award by all the parties. It expressly limits entry of judgment to a decision of the "losing" party to do so:

> Any arbitration award shall be non-binding, but if the losing party consents (such consent shall be in writing) a judgment upon the arbitration award may be entered in any court of competent jurisdiction and then become final and binding.

Franchise Agreement at Para. 33. In addition, the appeal was taken for an obviously improper purpose. Defendants simply want to harass Plaintiff out of a remedy, knowing that Plaintiff is not employed, lost all his money in an attempt to turn a losing franchise around based on the explicit statement of the Defendants that he would realize profits within three months of commencing operations, and hence cannot afford the minimum $250.00 hourly fee for arbitration. It should also be noted that Defendant MMPI had to unilaterally alter the arbitration rules to impose that liability on Plaintiff.

14. Sixth, Defendants have done nothing to expedite the appeal as required by their own case of <u>Cendant Corp. v. Forbes</u>, 72 F.Supp.2d 341 (SDNY 1999).

15. Seventh, perhaps the prime reason why a stay should not issue is found in the words of 9 U.S.C. 2:

> ... save upon such grounds as exist at law or in equity for the rescission of any contract.

Plaintiff has clearly raised at this point sufficient reason in law or in equity to fall within this exception. He has alleged fraud in the inducement as to the entire contract and perhaps mistake. These are grounds for which the exception was created. <u>Great Western Mortgage Corp. v. Peacock</u>, 110 F.3rd 222 (3rd Cir. 1997) establishes that the district court must be satisfied that the

Page 5

parties entered into a valid arbitration agreement. Plaintiff was not an experienced businessman in the way of franchises, was coerced or defrauded into agreeing to arbitrate, and entered the agreement because the Defendants misled or concealed pertinent information from him. Great Western.

16. See also Southland Corp. v. Keating, 466 U.S. 1, 79 L.Ed.2d 1, at 16, 104 S.Ct. 852 (1984), f.n. 11 at 16 - a party may assert general contract defenses such as fraud to avoid enforcement of an arbitration agreement. Justice Stevens, dissenting, at 18, also correctly points out that a contract deemed void is revocable at law or in equity and that relative disparity in bargaining power between a franchisor and franchisee is a prime factor to consider in making such a determination. These matters have already been determined by the court and weigh against a stay in this case.

17. For all these reasons, a stay should not be granted in favor of MMPI, let alone the Graybill Defendants or Emmett. Plaintiff has pled fraud or mistake as a defense to avoid enforcement of the arbitration agreement, which is sanctioned not only by Supreme Court case law but also by 9 U.S.C. 2. At this stage of the proceedings, no defendant is entitled to a stay.

18. In conclusion, not only should a stay not be issued in this case, but the Motion and Appeal are frivolous. The statute itself provides the exception to the rule that arbitration agreements are to be enforced as a matter of federal policy. The Supreme Court decisions similarly indicate that there is an exception to the rule that arbitration agreements are to be enforced as a matter of federal policy. Thus, it is also a matter of federal policy that defendants can raise contractual defense to arbitration clauses wrongfully foisted upon them.

Respectfully Submitted,

*Robert White*

Robert J. White
Counsel for Plaintiff

**Certificate of Service**

The undersigned certifies that he has served a copy of this Response and Brief by first class mail on February 1, 2002, addressed to Harris J. Chernow, counsel for the Minuteman Defendants, at Buchanan Ingersoll, Eleven Penn Center, 14th Floor, 1835 Market Street, Philadelphia, PA 19103 and to Charles Rees Brown, counsel for the Graybill Defendants, at Nicholas & Foreman, 4409 N. Front Street, Harrisburg, PA 17110.

_Robert White_
Robert J. White